OPINION
Defendant-appellant Johnny King appeals from his convictions of aggravated robbery and an accompanying firearm specification which were entered in the Mahoning County Court of Common Pleas. For the following reasons, appellant's convictions are affirmed.
 STATEMENT OF FACTS
On November 14, 1994, Daniel Smith pulled into a store in Youngstown. His friend, Dion Green, exited the vehicle and entered the store. Meanwhile, a car pulled behind Smith and blocked his car. A man got out of the car, knocked on Smith's window and asked for money. After Smith denied having money, the man pulled a chrome handgun out of his waistband and threatened to "pop" Smith. Thus, Smith rolled his window partly down and threw his money onto the ground. As the robber was collecting the money, Green exited the store and started getting into the car. When Green realized that a robbery was occurring, he got out of the car to throw money to the robber. The robber told Green that if he were trying to pull a gun, then he would "pop" him.
Smith recognized the robber as Johnny King and reported this to the Youngstown Police Department. At the police station, Smith was shown an array of seven pictures from which he picked out the picture of appellant. Green watched Smith choose appellant's picture, and then he too chose that picture. A black .9mm handgun was found on appellant when he was arrested; however, this gun was not alleged to be the gun used in the robbery. Appellant was then indicted on two counts of aggravated robbery with firearm specifications and one count of carrying a concealed weapon. The concealed weapon charge was later severed for trial purposes.
Appellant filed a motion to suppress the photographic identification. This motion was overruled, and a jury trial proceeded. On July 5, 1995, the jurors returned after approximately four hours of deliberation and stated that they were unable to reach a verdict. The court gave what is known as aHoward instruction and sent the jury back to deliberate further. When the jury returned, their verdict was not guilty as to the aggravated robbery of Green and guilty as to the aggravated robbery of Smith with the attendant firearm specification. Appellant was then sentenced to seven to twenty-five years plus three years of actual incarceration.[1] Timely notice of appeal was filed by trial counsel. Appellate counsel was then appointed. Although the brief submitted by appellant's counsel was extremely untimely filed, i.e. March 24, 1999, we allowed its submission. Also, on March 27, 1999, appellant filed a pro se brief. We will address the issues raised in this pro se brief last.
 ASSIGNMENT OF ERROR NUMBER ONE
The brief filed by appellant's counsel sets forth three assignments of error, the first of which alleges:
 "DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN THE COURT DENIED THE MOTION TO SUPPRESS, THUS ALLOWING TAINTED IDENTIFICATION EVIDENCE TO BE PRESENTED AT TRIAL."
Appellant contends that the trial court should have suppressed the identification testimony as a result of a tainted photographic line-up. Before such testimony is suppressed, the trial court must find that the identification procedure employed was so impermissibly suggestive that there is a substantial likelihood of misidentification. State v. Waddy (1992), 63 Ohio St.3d 424,438. However, even if the procedure was unnecessarily suggestive, the identification need not be suppressed if it is reliable under the totality of the circumstances. Id., citingNeil v. Biggers (1972), 409 U.S. 188. The factors to consider in determining whether an identification is reliable include the witness's certainty, degree of attention, opportunity to view the suspect, accuracy of prior description, and the time elapsed between the crime and the identification. Id. at 439.
Appellant argues that the photographic array was tainted because the subjects in the seven photographs did not resemble one another and because there were jail bars in the background of appellant's photograph. Initially, we note that there were jail bars present in one of the other photographs in the array. Thus, appellant's photograph was not singled out by this feature. Nonetheless, we caution law enforcement about utilizing photographs with distinguishing features such as jail bars. Regardless, any suggestiveness was rendered moot by our analysis,infra, based upon Smith's reliable identification of appellant.
Appellant also argues that he is only 5'7" and some of the other subjects are taller. However, the pictures do not reveal heights. Thus, this argument is not as relevant as it would be in a live line-up. As for appellant's complaint that the six subjects in the photographic array do not resemble him, this is very subjective. Admittedly, one of the subjects looks nothing like appellant; however, this subject was added to the array because he was alleged to be one of the occupants of the car which blocked Smith's car in as the robbery took place. (See State's Exhibit 6) It appears that at least three of the subjects bear a fairly close resemblance to appellant. (See State's Exhibits 2, 3, 5). Moreover, the state need not go so far as to find subjects that look identical to the main suspect.
However, even if we assume arguendo that the photo array was unduly suggestive, appellant must still establish that the identifications were unreliable. Accordingly, appellant argues that the identifications made by both Green and Smith were unreliable. We agree that Green's photographic identification was both unduly suggestive and unreliable. Green did not know appellant prior to the robbery, nor did he see him well at the scene of the robbery. (Tr. 41, 77). Green admitted to only choosing the photograph of appellant after seeing Smith choose that photograph. (Tr. 45). He confessed that he would not have been able to pick out appellant without the influence of Smith's choice. (Tr. 77). Green should not have been permitted to view Smith make his choice of photos. The court should have suppressed Green's identification testimony.
However, Smith's identification testimony was, properly admitted. Smith stated that appellant's face was within arm's reach of him during the course of the robbery. (Tr. 102). Smith's initial description of appellant as a black male with short hair around eighteen years old, measuring 5'7" and weighing 120 pounds matched appellant's actual features. It must also be remembered that Smith claimed to know the person who robbed him; he specifically accused appellant by name. Smith explained that he met appellant at a park playing basketball and saw him approximately five times after first meeting him. This fact is important because an identification is even more reliable if the witness knew the suspect, prior to the identification. Waddy at 440. See, also, State v. Parker (1990), 53 Ohio St.3d 82, 87;State v. Ross (Oct. 12, 1999), Mahoning App. Nos. 96 CA 247, 96 CA 251, unreported, 7-8. For the foregoing reasons, it is reasonable to believe that Smith had an independent recollection of appellant which did not rely upon the photo array in any part. The credibility of Smith's assertions were properly left for the jury. Therefore, Smith's identification was sufficiently reliable and was properly admitted.
Although Green's unreliable identification of appellant was revealed to the jury, the jury also heard Green admit that he could not have recognized appellant and thus would not have chosen appellant's picture had he not witnessed Smith choosing appellant's picture. (Tr. 43-45, 77). Thus, the jury could discount Green's identification on their own which they apparently did when they found appellant not guilty of robbing Green. As previously stated, there is no reliability problem with Smith's identification. The jury apparently found appellant guilty of robbing Smith because they believed that Smith's identification was correct.
For the aforementioned reasons, the trial court's error in admitting Green's identification was rendered harmless. Our decision on this matter is bolstered by the Supreme Court's decision in State v. Fears (1999), 86 Ohio St.3d 329. In that case, the victim admitted at trial that she did not see the robber/shooter but only identified him in a photo line-up after two bystanders told her who had exited the house. Id. at 338-339. The court held that the victim's identification testimony was cumulative to the bystanders' testimony and, hence constituted harmless error. Id. In accordance, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error contends:
 "THE STATE FAILED TO PROVE THAT THE DEFENDANT HAD A FIREARM ON OR ABOUT HIS PERSON OR UNDER HIS CONTROL WHILE COMMITTING A FELONY AS DEFINED IN OHIO REV. CODE ANN. § 2929.71."
Appellant argues that the state presented insufficient evidence to prove the firearm specification beyond a reasonable doubt. Whether or not the state's evidence is sufficient is a question of law dealing with adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380,386. The court must view the evidence in the light most favorable to the state and determine whether any rational fact-finder could find that the essential elements of the crime have been proven beyond a reasonable doubt. State v. Goff (1998),82 Ohio St.3d 123, 138, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
The essential elements of a firearm specification as relevant to the case at bar are that the offender had a firearm on or about his person or under his control while committing the felony. R.C. 2929.71(A)(2). Pursuant to R.C. 2923.11(B)(1), a firearm is defined as any deadly weapon capable of expelling projectiles by action of an explosive propellant, including an unloaded firearm and one that is inoperable but that can readily be made operable. To determine whether a firearm is capable of such expulsion, the fact-finder may rely on circumstantial evidence, such as any representations or actions of the offender. R.C. 2923.11(B)(2). As such, a totality of the circumstances approach is appropriate to determine whether there is sufficient evidence for a firearm specification conviction. Thompkins at 383.
Appellant insists that the victims' unfamiliarity with guns, in that they were not certain if the gun was a revolver or an automatic, is a fatal flaw in the state's case. However, both Smith and Green testified that they saw the chrome tip of a handgun. A defendant should not be acquitted of a firearm specification merely because the victim could not specifically identify the type of gun which was pointing at him. Additionally, Green opined that the gun may have been a .25mm as he has seen such a gun at home. (Tr. 84).
Nevertheless, appellant continues to argue that the testimony of the two witnesses that they saw the tip of a chrome handgun is insufficient to show that an operable firearm was utilized in the commission of the robbery. The state points out that after Smith denied having money, appellant pulled a gun out of his waistband and pointed it at Smith. Furthermore, appellant threatened to "pop" both Smith and Green. Testimony established that to "pop" someone means to shoot someone.
The Supreme Court of Ohio has held that a description of the gun as being black and possibly automatic was sufficient for conviction of a gun specification when combined with implicit threats to shoot. Thompkins at 382. "[W]here an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. at 384 (Emphasis added). In the case at bar, there existed a description of the handgun as being chrome plusexplicit verbal threats to shoot the victims. These explicit threats to shoot during the robbery constitute more evidence of operability than existed in Thompkins. As such, the state presented sufficient evidence to the jury from which they could find beyond a reasonable doubt that appellant possessed a firearm at the time of the offense. Accordingly, the firearm specification conviction is affirmed.
 ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error contends:
 "THE COURT ERRED IN GIVING THE COERCIVE HOWARD CHARGE PREMATURELY AND ADDING ADDITIONAL LANGUAGE TO THE HOWARD CHARGE, THUS DEPRIVING DEFENDANT A FAIR TRIAL IN VIOLATION OF THE UNITED STATES CONSTITUTION AMENDMENT VI AND XIV AND THE OHIO CONSTITUTION ART. I §§ 1, 2, 10 AND 16."
The jury began deliberating at 12:15 p.m. on July 3, 1995. At 3:50 p.m., the jury stated that it was unable to make a determination that evening. As court was closed on the Fourth of July, the jurors resumed deliberations at 9:00 a.m. on July 5. At 10:10 a.m., the jurors informed the court that they were unable to reach a verdict. The court then gave a Howard charge over defense counsel's objection. After giving the Howard charge, the court added a few words of its own.
At 11:15 a.m., the jury submitted the following question, "Is it aggravated robbery when the victim is not actually asked for the money and voluntarily gives it up out of fear?" The court responded merely by rereading the elements of the crime. The jury resumed deliberations, and at 11:45 a.m., they returned a not guilty verdict as to the aggravated robbery of Green and a guilty verdict as to the aggravated robbery of Smith with a firearm specification.
On appeal, appellant argues that the Howard charge was given prematurely. The Howard charge, which was formulated by the Supreme Court in State v. Howard (1989), 42 Ohio St.3d 18, provides:
 "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others.
 You, should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so.
 You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors." Id. at 25-26. (Paragraph breaks added).
It is within the trial court's sound discretion to decide whether and when to give the above charge. State v. Ballew (Feb. 26, 1999), Hamilton App. No. C-980442, unreported, 2; State v.Fannin (Dec. 12, 1995), Franklin App. No. 95APA05-560, unreported, 4. In this case, it appears that the jury could not reach a decision after three and one-half hours on the first day. On the second day of deliberations, they deliberated for a little over an hour and then reported that they were unable to reach a verdict. Thus, the judge determined that the jury was deadlocked and that a Howard charge was appropriate. We do not agree with appellant's contention that four and one-half hours of deliberation is an insufficient length of time to warrant the reading of the Howard charge. In fact, the Supreme Court has ruled that a trial court acted appropriately by giving a Howard
charge after this exact amount of deliberation time. State v.Mason (1998), 82 Ohio St.3d 144, 167. Therefore, we conclude that the court's reading of the Howard instruction was not premature.
Appellant also argues that he was prejudiced when the court added the following language after reading the Howard charge:
 "Ladies and gentlemen, the Court is going to give you some additional time to discuss this matter and what I've substantially said to you. You are the conscience of the community, so to speak. The jurors that we would have that would hear this case again would have the same evidence, and there's no reason to believe that they would think about it any differently. So the Court is going to let you deliberate for a length of time, and you let us know prior to the noon hour."
(Tr. 379-380; emphasis added to the portions with which appellant takes issue).
Appellant claims that the above language is overly coercive, leaving the jury with the impression that they must reach a verdict by a certain time and that a hung jury is not an option. Although the better practice is to read the Howard charge and leave it at that, an instruction is not coercive merely because a court adds language of encouragement to the instruction. Howard
at 25. See, also, State v. Lopez (1993), 90 Ohio App.3d 566, 581. A court should not imply that a jury must return a verdict, but a court is permitted "to remind the jury of the reason a jury is assembled, namely, to reach a unanimous decision if each juror can conscientiously agree to a verdict." Howard at 23-24.
In this case, we cannot say that the court's "conscience of the community" language stressed that the jury must return a verdict. It merely reinforced the language of the Howard charge. As for the court's statement, "let us know prior to the noon hour," we do not take this to mean that the jury had to reach a verdict by noon but only that the court would like to know if the jury is still deadlocked at such time. It should be noted that jury instructions should not be dissected and examined piece-by-piece but should be reviewed as a whole in the proper context. State v.Price (1979), 60 Ohio St.2d 136, 141, citing Cupp v. Naughten
(1973), 414 U.S. 141, 146-147. Hence, in viewing the Howard
instruction and the court's addition thereto as a whole, we do not conclude that the court coerced the jury into reaching a verdict. It should be remembered that after the court's supplementary instruction, the jury-deliberated for one hour, at which time they submitted a question to the court. This question demonstrates that the jury was having difficulty determining whether appellant was guilty of the robbery of Green. After the court reread the elements of the crime, the jury deliberated for a short time and returned a verdict which found that appellant was not guilty of the aggravated robbery of Green and guilty of the aggravated robbery of Smith. For the foregoing reasons, this assignment of error is overruled.
 ISSUES RAISED IN APPELLANT'S PRO SE BRIEF
Appellant complains that his appointed counsel is ineffective for failing to file a timely brief. Because we allowed two briefs to be untimely filed, one pro se and one written by counsel, this argument need not be addressed.
Next, appellant argues that there was insufficient evidence to support his conviction of the firearm specification. This argument need not be addressed at this point since we overruled this argument as briefed by appellant's counsel under assignment of error number two supra.
Appellant also appears to argue that he should not have been sentenced to three years on the firearm specification and eighteen months on the concealed weapon charge because the offenses are allied and thus the sentences should have merged. However, appellant is mistaken. The firearm specification was attached to the aggravated robbery charge which allegedly occurred on November 11, 1994. The carrying a concealed weapon charge resulted from the fact that the police found a black .9mm handgun when they arrested appellant on November 17, 1994. This handgun was not alleged to be the same handgun used in the robbery. Because the concealed weapon charge arose from separate facts on a separate day, the charge was severed from the aggravated robbery and its firearm specification. Appellant pled guilty to the concealed weapon charge, and his sentence of eighteen months was ordered to run concurrent to the robbery sentence of seven to twenty-five years. The three years of actual incarceration on the firearm specification are statutorily mandated to run consecutive to the robbery sentence. See R.C. 2929.72(A). As such, appellant's argument is without merit.
We also notice that appellant believes that he is not being credited with the 231 days that he served in the Mahoning County Jail as he awaited trial. In its sentencing entry, the trial court specifically ordered, "The Defendant is to receive credit for two hundred thirty-one (231) days spent in the Mahoning County Jail to date." If appellant has not been so credited, then the trial court's order is being violated, and we hereby order that the violation be remedied by crediting the ordered 231 days to appellant.
For the foregoing reasons, the judgment of the trial court is affirmed.
Donofrio, J., and Waite, J., concurs.
APPROVED:
 _________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Appellant pled guilty to carrying a concealed weapon and was sentenced to eighteen months to run concurrent with his seven to twenty-five year sentence.