THE STATE OF OHIO, APPELLANT, *v.* HOWARD, APPELLEE.

[Cite as State *v.* Howard (1989), 42 Ohio St. 3d 18.]

(No. 87-2154—Submitted January 18, 1989—Decided April 12, 1989.)

*Gary L. VanBrocklin,* prosecuting attorney, *Mary Jane Stephens* and *Kathi McNabb,* for appellant.

*Randall M. Dana,* public defender, and *Robert L. Lane,* for appellee.

DOUGLAS, J. The sole issue before

this court is whether the supplemental jury instruction given to the jury on July 31, 1981 was coercive in the sense that it pressured members of the jury who were in the minority to abandon their positions. The essential question becomes whether the supplemental instruction given to the jury by the trial judge, known as the *Allen* charge, is allowed in Ohio.

The *Allen* charge or "dynamite" charge, as it is also known, arises from *Allen* v. *United States* (1896), 164 U.S. 492. In *Allen,* the United States Supreme Court set forth a summary of the supplemental instruction given by the trial court:

"* * * [A]lthough the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. * * *" *Allen, supra,* at 501.

This is, in essence, what the supplemental jury instruction in the case before us stated. In fact, the complete language of the supplemental instruction given by the judge in *Allen* is nearly, though not exactly, the same as the language of the supplemental instruction given in this case.[3]

---

[3] The pertinent text of the supplemental instruction in *Allen, supra,* reads as follows:

" 'The only mode provided by our Constitution and laws for deciding questions of fact in criminal cases is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty can not be attained or expected. Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions, and not a mere acqui[e]s[c]ence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that the case must, at some time, be decided; that you are selected in the same manner, and from the same source from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men more intelligent, more impartial, or more competent to decide it; or that more or clearer evidence will be produced on the one side or the other. And with this view it is your duty to decide the case if you can conscientiously do so. In order to make a decision more practicable the law imposes the burden of proof on one party or the other in all cases.' In the present case the burden of proof is upon the Government of the United States. 'But in conferring together you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression upon the the [sic] minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to,

Although the trial judge gave a supplemental charge to the jury that substantially conformed to the traditional *Allen* charge, it is clear that Ohio has neither adopted nor rejected the *Allen* charge as a proper supplemental instruction. As we stated in *State* v. *Maupin* (1975), 42 Ohio St. 2d 473, 484, 71 O.O. 2d 485, 491, 330 N.E. 2d 708, 715, "* * * the original *Allen* charge has never been a part of Ohio jurisprudence." We now directly meet the issue and find that the trial judge's supplemental instruction was improper.

The *Allen* charge has long been the subject of criticism from legal scholars.[4] The brunt of this criticism is directed at the potentially coercive impact the language of the *Allen* charge can have on a jury. The criticism centers on the effect of language advising the jury that a decision must be reached, thereby depriving either the state or the defendant of the possibility of a hung jury and a mistrial. In addition, and of particular importance to this court, is the criticism that the *Allen* charge is unduly coercive to members of the jury in the minority because it, in effect, orders those members to reevaluate their position in light of the fact that fellow jurors are unswayed, but does not require jurors in the majority to undertake a corresponding reevaluation. The effect of this charge is to place the authority of the trial judge behind the position of the majority. This, potentially, creates a force that few dissenting jurors can resist. It subtly changes the requirement that the jury verdict be unanimous to one more closely resembling majority rule.

The criticism of the *Allen* charge has not fallen on deaf ears. Many jurisdictions have either modified the *Allen* charge or abandoned it entirely because, as the state of Arizona concluded in abandoning *Allen*, in *State* v. *Thomas* (1959), 86 Ariz. 161, 166, 342 P. 2d 197, 200, "* * * the evils far outweigh the benefits * * *" of continuing its use. Other jurisdictions abandoning or modifying the *Allen* charge are the District of Columbia in *Winters* v. *United States* (D.C. App. 1974), 317 A. 2d 530, Colorado in *Taylor* v. *People* (1971), 176 Colo. 316, 490 P. 2d 292, and California in *People* v. *Gainer* (1977), 19 Cal. 3d 835, 139 Cal. Rptr. 861, 566 P. 2d 997.[5]

doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows.' " Brief for United States at 29, *Allen* v. *United States,* reprinted in Briefs and Records of the United States Supreme Court, Part V.

This charge to the jury was omitted in printing the transcript of record of the *Allen* case. See Briefs and Records of the United States Supreme Court, Part V, *Allen* v. *United States,* Record at 127; Brief for United States at 2. However, the charge was reprinted in the brief of the United States, filed with the Clerk of the Supreme Court of the United States on October 21, 1896. See Brief for United States, *supra,* at 29.

[4] See Note, Deadlocked Juries and Dynamite: A Critical Look at the "Allen Charge" (1964), 31 U. Chi. L. Rev. 386; Hennessey, The *Allen* Charge: Dead Law a Long Time Dying (1972), 6 U.S.F.L. Rev. 326; Note, The *Allen* Charge: Recurring Problems and Recent Developments (1972), 47 N.Y.U.L. Rev. 296, 316-317; Marcus, The *Allen* Instruction in Criminal Cases: Is the Dynamite Charge About to be Permanently Defused? (1978), 43 Mo. L. Rev. 613; O'Sullivan, Deadlocked Juries and the Allen Charge (1985), 37 Me. L. Rev. 167.

[5] For a more complete list of jurisdictions that have abandoned or modified the

In addition to the foregoing states that have acted to abandon or modify the *Allen* charge, several federal courts have taken the same steps. Using supervisory power over courts within their circuits, federal courts of appeals have prohibited use of the *Allen* charge, to the extent that it tends to coerce jurors in the minority to defer to those in the majority, in *United States* v. *Silvern* (C.A.7, 1973), 484 F. 2d 879, *United States* v. *Thomas* (C.A.D.C. 1971), 449 F. 2d 1177, and *United States* v. *Fioravanti* (C.A.3, 1969), 412 F. 2d 407. Other circuits have limited the use of *Allen* charges. See *United States* v. *Scott* (C.A.6, 1977), 547 F. 2d 334, and *United States* v. *Angiulo* (C.A.1, 1973), 485 F. 2d 37.

In short, we firmly position ourselves with those jurisdictions that have abandoned the traditional *Allen* charge.[6] Our reasoning today echoes the criticism of the *Allen* charge voiced by this court in *Maupin, supra,* at 483, 71 O.O. 2d at 490, 330 N.E. 2d at 715, where we stated:

"* * * The principle [*sic*] and most frequent reason advanced [for rejecting the *Allen* charge] is that it lacks balance; that the thrust of the *Allen* instruction is directed to the minority jurors only and is potentially coercive upon them to agree with those jurors constituting the majority." (Citations omitted.)

Accordingly, since we find that the use of the *Allen* charge was improper, we agree with the court of appeals that failure by appellee's former counsel to raise this error on direct appeal, for whatever reason, constituted ineffec-

tive assistance of counsel, in violation of appellee's rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution. Certainly the facts of this case, where only one hour after the *Allen* charge was given, a unanimous verdict was reached when nearly two and one-half days of deliberation had failed to produce agreement, raise at least the inference of coercion affecting appellee's substantial right to a fair and impartial jury. "The test in determining if the accused had effective retained counsel is whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done." *State* v. *Hester* (1976), 45 Ohio St. 2d 71, 74 O.O. 2d 156, 341 N.E. 2d 304, paragraph four of the syllabus. We agree with the court of appeals that substantial justice was not accorded to the appellee herein and that his case should be remanded to the trial court for a new trial.

Though we have determined that the use of the traditional *Allen* charge is improper, our duty is not yet complete. We would be remiss in our responsibility of supervising lower courts if we did not provide a supplemental instruction that, in our opinion, avoids the pitfalls of the traditional *Allen* charge.

In formulating such an instruction, we are cognizant of several conflicting considerations. On one hand, a supplemental instruction must not be coercive by stressing that the jury must

---

*Allen* charge, see Annotation (1980), 97 A.L.R. 3d 96.

[6] We are not unmindful that the United States Supreme Court still views *Allen* as good law. "The continuing validity of this Court's observations in *Allen* are beyond dispute * * *." *Lowenfield* v. *Phelps* (1988),

484 U.S. ___, ___, 98 L. Ed. 2d 568, 577, 108 S. Ct. 546, 551. However, close scrutiny of the charge given in *Lowenfield* reveals that it was not the traditional *Allen* charge. The charge did not speak specifically to minority jurors. *Id.* at ___, 98 L. Ed. 2d at 575, 108 S. Ct. at 549.

reach a verdict, a clear misstatement of law.[7] On the other hand, the instruction must allow the trial judge to remind the jury of the reason a jury is assembled, namely, to reach a unanimous decision if each juror can conscientiously agree to a verdict.

Finally, and most significant to our decision, the supplemental instruction must be balanced and neutral. It cannot, like *Allen,* single out jurors in the minority and urge them to reconsider their position. To be balanced, it must urge jurors in the majority to do the same.

Several approaches have been taken by jurisdictions in moving away from the traditional *Allen* charge. The most popular approach has been to adopt the standard proposed in the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (1968) 145-146, Standard 5.4. First proposed in 1968, the most recent version of the ABA standard is found in 3 American Bar Association Standards for Criminal Justice (2 Ed. 1986) 15-133. The ABA standard reads:

"Standard 15-4.4. Length of deliberations; deadlocked jury

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto[;]

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and

"(v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

The ABA also recommends, as complying with this standard, Instruction 8.11 found in Mathes, Jury Instructions and Forms for Federal Criminal Cases (1961), 27 F.R.D. 39, 97-98. See 3 American Bar Association Standards for Criminal Justice (2 Ed. 1986) 15-134. The recommended instruction reads:

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement,

---

[7] The trial judge in the case at bar went even further than the traditional *Allen* charge. When giving the second supplemental instruction, the judge said, "If you should fail to agree upon a verdict, the case is left open and undecided. Like all cases, this case must be disposed of sometime. * * *"

if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

"You are not partisans. You are judges — judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

A large number of states have abandoned the *Allen* charge by adopting the ABA standard. From California, in *People* v. *Gainer, supra,* to New Jersey, in *State* v. *Czachor* (1980), 82 N.J. 392, 413 A. 2d 593, states are disapproving of the *Allen* charge due to its coercive potential.[8]

While we likewise disapprove of the traditional *Allen* charge, we do not believe the ABA standard is the answer. Though we would not disapprove of its use, we believe a standard that more emphatically encourages the jury to reach a decision, if they can conscientiously do so, is preferable.

In searching for the proper balance in a supplemental instruction, we agree with *United States* v. *Johnson* (C.A.D.C. 1970), 432 F. 2d 626, 633, that the ABA standard is in reality a modified *Allen* charge. The major area of difference between the ABA standard and the traditional *Allen* charge is that the ABA standard does not require jurors in the minority to reconsider their opinions out of deference owed to the majority. We agree that jurors in the minority should not be

singled out as being required to rethink their position; to our mind this is the most objectionable aspect of the traditional *Allen* charge. We search now for a "modified" *Allen* charge that eliminates this aspect while still encouraging a verdict, if a verdict can be conscientiously reached.

In promulgating a supplemental instruction to be used by this state's trial courts in situations where it is appropriate, we are mindful of our two stated goals. It must encourage a verdict where one can conscientiously be reached. In addition, the instruction must be balanced, asking all jurors to reconsider their opinions in light of the fact that others do not agree. This even-handed treatment of all jurors would stand in contrast to the traditional *Allen* charge, as we noted in *Maupin, supra,* at 484, 71 O.O. 2d at 491, 330 N.E. 2d at 715.

Toward this end we propose a supplemental instruction that uses portions of the *Allen* charge language while ratifying the principle of neutrality contained in the ABA standard. In place of the traditional *Allen* charge, we approve the following supplemental instruction:

"The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or in-

---

[8] See Annotation (1980), 97 A.L.R. 3d 96, for a more complete listing of states.

telligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."

It is of interesting historical note to consider that in *Allen, supra,* at 501, the United States Supreme Court affirmed a supplemental instruction that was "* * * taken literally from a charge in a criminal case which was approved of by the Supreme Court of Massachusetts in *Commonwealth* v. *Tuey* [(1851), 62 Mass. 1], 8 Cush. 1 * * *." The Massachusetts court subsequently reconsidered the position it had taken in *Tuey* and, in *Commonwealth* v. *Rodriquez* (1973), 364 Mass. 87, 300 N.E. 2d 192, adopted a modified supplemental instruction that is similar to the instruction we adopt today.

In conclusion, we hold that the traditional *Allen* charge is not a proper supplemental charge to be given to juries in Ohio which have become deadlocked on the question of conviction or acquittal. Further, we reiterate that the supplemental instruction given by the trial judge in this case was improper and that appellee was denied

effective assistance of counsel when the issue was not raised on appeal. Therefore, we affirm the judgment of the court of appeals granting post-conviction relief and remand this case for a new trial. Our judgment shall have only prospective effect.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., SWEENEY, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., dissents.

RESNICK, J., dissents with opinion.

ALICE ROBIE RESNICK, J., dissenting. I respectfully dissent from the majority's holding. On January 13, 1988 the United States Supreme Court considered this issue in *Lowenfield* v. *Phelps* (1988), 484 U.S. ___, ___, 98 L. Ed. 2d 568, 576-577, 108 S. Ct. 546, 550, and held that when considered "in * * * context and under all the circumstances," the two jury polls and the supplemental charge did not impermissibly coerce the jury to return a death sentence. The supplemental charge in *Lowenfield* was similar to the traditional *Allen* charge long approved by that court on the ground that it was an attempt to secure jury unanimity.

The majority has considered the supplemental instruction here without addressing "all the circumstances" which must be considered before the so-called *Allen* charge can be termed coercive and thus reversible error.

Appellee, Raymond L. Howard, was convicted by a jury of aggravated murder in violation of R.C. 2903.01(A) on July 31, 1981. Appellee's trial counsel was appointed to also represent him in the direct appeal. On May 9, 1983, the court of appeals affirmed the judgment of the trial court. In that appeal the supplemental instruction to which a general objection had been

made was not raised as error or considered by the appellate court. A motion for leave to appeal to this court from the decision of the appellate court was denied on September 14, 1983 (case No. 83-1042).

Appellee, *pro se,* filed a petition for post-conviction relief on April 8, 1985. This petition was withdrawn apparently because appellee chose instead to seek a writ of habeas corpus in this court. However, on December 26, 1985, this court dismissed such writ without consideration on the merits (case No. 85-1121). Appellee subsequently filed a second petition for post-conviction relief on February 13, 1986 alleging that appellee's trial counsel was ineffective prior to, during, and on appeal, for various reasons.

This case presents a troublesome question which frequently occurs in appellate courts: Should the issue of ineffectiveness of counsel be raised, *sua sponte,* by the appellate court on direct appeal, when the same attorney represents the accused both at trial and on appeal so that this issue can be addressed in a timely manner?

In the case before us, more than five years had elapsed before the question of ineffective trial counsel was brought to the attention of a court. The better practice would be to require appellate courts to consider the entire record with a view to issues involving ineffectiveness of counsel when the same attorney represents the accused both at trial and on appeal. If error is then found, it can be treated in a timely manner and not, as here, after eight years have elapsed causing retrial to be almost impossible.

The trial judge in this case, at the request of the accused, had the petition for post-conviction relief reassigned to another judge for disposition. The newly assigned judge issued findings of fact and conclusions of law on May 13, 1986, which determined that

counsel was not ineffective in that his tactics were those of trial strategy. The judge further found that the supplemental charge to the jury was not coercive. Appellee appealed the decision to the court of appeals. On November 12, 1987, the appellate court, in a two-to-one opinion, reversed the decision of the trial court and granted appellee's petition for post-conviction relief, finding that the trial court's modified *Allen* charge was clearly directed to the minority jurors, thus holding that the charge was coercive and that counsel was ineffective in that he did not raise this issue on direct appeal.

In *Lowenfield, supra,* at ____, 98 L. Ed. 2d at 579, 108 S. Ct. at 552, the United States Supreme Court noted when faced with a lack of an objection under similar circumstances that:

"We are mindful that the jury returned with its verdict soon after receiving the supplemental instruction, and that this suggests the possibility of coercion. *United States Gypsum Co., supra* [438 U.S.], at 462, 57 L. Ed. 2d 854, 98 S. Ct. 2864. We note, however, that defense counsel did not object to either the polls or the supplemental instruction. We do not suggest that petitioner thereby waived this issue, *Wainwright* v. *Witt,* 469 U.S. 412, 431, n. 11, 83 L. Ed. 2d 841, 105 S. Ct. 844 (1985), but we think such an omission indicates that the *potential for coercion* argued now was not apparent to one on the spot. * * * *Id.* at 430-431, 83 L. Ed. 2d 841, 105 S. Ct. 844, and n. 11." (Emphasis added and footnote omitted.)

The court found that the lack of an objection from counsel who was present at the time of the giving of the supplemental instruction does not necessarily indicate coercion in the charge. In the instant case trial counsel entered a general objection but then did not raise the supplemental instruction

as error on appeal. Considering all the circumstances of this case, it could be concluded that counsel did not believe the supplemental charge given caused the jury to reach its ultimate verdict of guilty. Hence the supplemental charge was not coercive.

After a thorough review of case law in this area it becomes apparent that the mere giving of an *Allen*-type charge should not result in reversal of the conviction unless it can be shown based upon all the circumstances that the jury was coerced in arriving at its verdict solely due to the supplemental jury instruction.

The *Lowenfield* court further stated at ____, 98 L. Ed. 2d at 576-577, 108 S. Ct. at 550:

"Our review of petitioner's contention that the jury was improperly coerced requires that we consider the supplemental charge given by the trial court 'in its context and under all the circumstances.' *Jenkins* v. *United States,* 380 U.S. 445, 446, 13 L. Ed. 2d 957, 85 S. Ct. 1059 (1965) (*per curiam*). The use of a supplemental charge has long been sanctioned. Nearly a century ago in *Allen* v. *United States,* 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896), this Court reviewed a charge similar but by no means identical to that given to the Louisiana jury here, and concluded that it was not reversible error even within the federal system."

In numerous cases where trial courts have given a supplemental jury instruction containing language similar to that in this case which directs dissenting or minority jurors to reconsider their positions, courts have found, in its context and under all the circumstances, that the instruction was not prejudicially coercive. See *State* v. *Maupin* (1975), 42 Ohio St. 2d 473, 71 O.O. 2d 485, 330 N.E. 2d 708; *Commonwealth* v. *Rodriquez* (1973), 364 Mass. 87, 300 N.E. 2d 192; *United*

*States* v. *Burke* (C.A. 2, 1983), 700 F. 2d 70, certiorari denied (1983), 464 U.S. 816 (supplementary charge not set out); *United States* v. *Fioravanti* (C.A. 3, 1969), 412 F. 2d 407, certiorari denied *sub nom. Panaccione* v. *United States* (1969), 396 U.S. 837; *United States* v. *Sawyers* (C.A. 4, 1970), 423 F. 2d 1335, 1342-1343 ("[A]ppropriate use of the pure *Allen* charge [given when jury indicates that it is deadlocked] is not *per se* reversible error. Even so, we strongly recommend use of a modified version of *Allen* that * * *" mentions duty of majority to listen and consider any minority viewpoint and does not direct a juror to distrust his own judgment if he finds a large majority of jurors taking a view different from his own.); *United States* v. *Kelly* (C.A. 5, 1986), 783 F. 2d 575, certiorari denied (1986), 479 U.S. 889; *United States* v. *Silvern* (C.A. 7, 1973), 484 F. 2d 879 (en banc) (requires prospective use of ABA-approved standard supplementary *Allen*-type instruction); *United States* v. *Brown* (C.A. 7, 1969), 411 F. 2d 930; *United States* v. *McKinney* (C.A. 10, 1987), 822 F. 2d 946; *United States* v. *Rey* (C.A. 11, 1987), 811 F. 2d 1453, certiorari denied (1987), 484 U.S. ____, 98 L. Ed. 2d 63, 108 S. Ct. 103; *Fulwood* v. *United States* (C.A. D.C. 1966), 369 F. 2d 960, certiorari denied (1967), 387 U.S. 934.

Today, the majority approves of a modified supplemental instruction similar to that adopted by the Supreme Judicial Court of Massachusetts in *Commonwealth* v. *Rodriquez* (1973), 364 Mass. 87, 300 N.E. 2d 192. In *Rodriquez* the Massachusetts court amended the charge it had approved in *Commonwealth* v. *Tuey* (1851), 62 Mass. 1, 8 Cush. 1. These amendments, however, were, in the interests of the better administration of criminal justice, to apply to future cases. *Rodriquez, supra,* at 98, 300 N.E. 2d at 200.

The *Rodriquez* court held that the defendant's exception to the terms, timing, and setting of the giving of the *"Tuey"* charge fails "* * * because our decided cases have held the *Tuey* language to be nonprejudicial, and we do not find enough in the circumstances of its use here to render it coercive to the point of calling for reversal of the judgments. * * *" (Emphasis added.) *Id.*

A nearly identical charge to the one before us and to the one deemed nonprejudicial in *Rodriquez* was given by the trial court and reviewed by this court in *State* v. *Maupin, supra,* at 482-483, 71 O.O. 2d 485, 490-491, 330 N.E. 2d 708, 714-715, fn. 3. This court held that the supplemental instruction was not prejudicially coercive and, *under the circumstances,* the court's giving of the charge was not an abuse of discretion. *Id.* There, the court was notified by the jury that it was having difficulty reaching an agreement after deliberations of approximately two and one-half hours. The court gave an *Allen* charge, the jury retired to further deliberate, and returned with a verdict of guilty in less than one-half hour. *Id.* at 477, 71 O.O. 2d at 487, 330 N.E. 2d at 711-712. There were no other circumstances present with the potential of coercion of the jury. *Id.* at paragraph four of the syllabus. Cf. *State* v. *Sabbah* (1982), 13 Ohio App. 3d 124, 13 OBR 155, 468 N.E. 2d 718.

Similarly, in this case, a supplemental charge was given when the jury indicated to the court that it was having difficulty reaching a unanimous verdict as to the aggravated murder charge after several hours of deliberations. The jury then retired to deliberate further. Subsequently a modified *Allen* charge was given after the jury again indicated difficulties following nearly two additional days of deliberations. As in *Maupin,* no inquiry was made as to the numerical division of the jury. Upon retiring, the jury returned with its verdict in approximately one hour, a longer period of further deliberations than in the *Maupin* case and many of the other cases previously cited.

In conclusion, I do not find that the trial court committed reversible error by giving the modified *Allen* charge in this case. The use of such a charge did not constitute reversible error in and of itself. The entire charge which was given must be considered, not simply a portion thereof. The trial judge did in fact remind the jurors that the burden of proof was upon the state to prove each and every element of the crime beyond a reasonable doubt. Further, he told them if they are in doubt, the defendant is entitled to the benefit of that doubt. In addition he told them that the verdict "to which a juror agrees must be, of course, his own verdict." It cannot be presumed that any juror was coerced into agreeing to the guilty verdict solely due to the modified *Allen* charge. *State* v. *Moon* (1911), 20 Idaho 202, 117 P. 757.

After a thorough review of the record in this case, I find that there was proof beyond a reasonable doubt establishing each and every element of the crime charged. In fact it was not even a close case. Therefore, it cannot be said with certainty that the jury returned a verdict of guilty, in less than one hour from receiving the modified *Allen* charge, due to being coerced by that supplemental instruction. I do not find that the appellee's constitutional rights have been violated, and hence the giving of this supplemental charge was not reversible error.

I would, therefore, reverse the judgment of the court of appeals and reinstate the conviction.