OPINION
This appeal is taken by Defendant-Appellant Jeffrey Gary from the judgment entered by the Court of Common Pleas of Hancock County convicting him of trafficking in marijuana within one thousand feet of a school and sentencing him to fourteen months in prison.
On January 15, 1998, Jeffrey L. Gary was indicted for one count of trafficking in marijuana within one thousand feet of a school premises, a felony of the fourth degree. On December 23, 1998, Gary entered a plea of not guilty and a jury trial was scheduled for July 19, 1999.
On July 19, 1999 a jury was impaneled and began hearing testimony. The following day at approximately 5:00 pm the case was submitted to the jury. The jury deliberated for four hours, at which time the court returned the jury to the courtroom and was advised that additional deliberations would not be fruitful. The following exchange occurred between the court and the jury:
 The court: Please be seated. Ladies and Gentlemen, I have a question to direct to the foreman at this point in time. This is a very critical part of your deliberations, so I'm going to ask that the response come only from the foreperson, and once I chat with the foreperson I will probably need to talk to counsel over in the corner. So I'd ask that you be patient and we'll get through this here as expeditiously as we can. Who is the foreperson?
Juror No. 8: (Affirmative Response)
 The court: Mr. Lewis. Without disclosing the status of your deliberations, you folks have been here for quite a while today. I've had Mrs. Miller talk to you a couple times about did you want to have some dinner. Apparently you wanted to continue on with your deliberations, which is entirely up to you. I'm going to suggest that if there's a problem at this point, perhaps the thing to do might be to recess for the evening. You've been here for a long day. Come back and start again about 8:30 tomorrow morning, see where that takes us.
 Are the deliberations to such a point that taking a fresh look at the case tomorrow morning would be of assistance to you?
Juror No. 8: I don't believe so.
* * *
 The court: * * * Court's going to ask that you folks go home, take a fresh look at this case and come back to continue your deliberations at about 8:30 A.M. tomorrow morning.
Rather than declaring a mistrial because of a deadlocked jury, the court sent the jurors home for the evening instructing them to return the following morning. Upon returning the following morning, Juror No. 10, Howard Von Stein, informed the court his father-in-law passed away suddenly the prior evening. Mr. Von Stein told the court that his family would be meeting later in the morning to make proper arrangements.
Gary's counsel immediately requested a mistrial. After discussing the matter with counsel, the court determined the appropriate course of action would be to privately inquire of Mr. Von Stein in chambers about his ability to continue deliberations. The court met privately with Mr. Von Stein. He indicated that he had not slept well the night before and was tired but he felt he could continue to deliberate and would be more than able to separate his family situation from the issues presented to the jury.
The jury deliberations resumed and several hours later that morning the jury returned a verdict of guilty. The jurors were polled to ensure the verdict reflected their individual vote. On October 7, 1999 the court sentenced Gary to fourteen months with the Ohio Department of Rehabilitation and Corrections. On appeal from that conviction Gary presents the following two assignments of error:
 The trial court committed prejudicial error by overruling defendant's motion for mistrial and requiring continued jury deliberations despite jury deadlock and a juror's family emergency.
 The trial court committed plain error in failing to give a Howard charge to the jury when the jury was deadlocked on the issue of guilt or innocence.
In his first assignment of error Gary claims that the trial court erred when it failed to grant a mistrial after the jurors indicated they were deadlocked and a juror's family member had passed away. It's self-evident that the events which may necessitate a mistrial occur at trial and are observed first-hand by the trial court. As a result, the `the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." State v. Glover (1988),35 Ohio St.3d 18, 19. Indeed an "appellate court will not disturb the trial court's exercise of discretion absent a showing that the accused has suffered material prejudice." State v. Sage (1987),31 Ohio St.3d 173.
The record reveals that the following colloquy occurred between the parties and the court after the foreperson of the jury informed the court of potential deadlock on the issue of guilt or innocence:
The Court:
 Here we go. I think I have to go on to give them a charge, or specifically order them to come back tomorrow morning, disregarding the foreman's comments to me. Any thoughts, Mr. Miller, Mr. Galose?
 Mr. Miller:
 Premature to give them a charge on being deadlocked. For the record, the jury went out shortly after 5:00. By the buzzer at 9:00 clearly waited until the top of the hour that they were having a difficult. I think they put themselves on some type of time frame by waiting until the top of the hour. The fact that they have been here almost nine hours without having anything to eat, been in the jury room with only one break to go outside and stretch, get something to drink, I think that we should allow them to go home, rest, and come back fresh tomorrow.
 The Court:
 That's since 5:00. They had two or three breaks this afternoon, Mr. Miller. Not like they have been chained to the jury room.
 Mr. Miller:
 My point is, the last four hours they have been in the jury room together with only one break. And I don't know if counsel and personnel are tired, but at this time it's been a long day, Judge. I think that's true for the jury as well. We have not been in a small room confined, but I think the pressure of that would be even more so.
 Mr. Galose:
 Your Honor, I would agree. I think it's premature to give an Allen charge or similar charge. I would have no objection if the Prosecutor declared a mistrial. Alternatively, no objection if you send them home.
 Mr. Miller:
I have no intention of declaring a mistrial.
The Court:
 He doesn't have the authority to do that short of making a motion that the Court has to grant, obviously. Okay. I'll have them back tomorrow morning.
 Upon further examination of the statements outlined above, it is apparent that not only the court felt it premature to declare a mistrial at the end of the first day of deliberations but so did counsel for the parties. Indeed, the defense attorney said, "* * * [I] have no objection if you send them home". Therefore, this court cannot say that Gary suffered material prejudice as a result of the court's decision not to declare a mistrial upon being informed of a potential jury deadlock after the jury had deliberated for only four (4) hours.
 Gary maintains however, that even if failure to dismiss thedeadlocked jury after four hours wasn't material prejudice, thenthe failure of the court to dismiss the jury and declare amistrial after a juror's family member died is certainly materialprejudice. The record reveals that after deliberating for onlyfour hours the jury was released to go home for the evening toreconvene in the morning with the hope that the rest would givethem a fresh prospective and avoid deadlock. Upon returning thenext day Juror No. 10 informed the court that his father-in-lawhad passed away suddenly the previous evening. Upon receipt ofthis information the following discussion took place:
 The court: * * * The court has learned through Mrs. Miller that juror no. 10, Howard Von Stein, upon reporting this morning, informed Mrs. Miller that his wife's mother father passed away suddenly last evening. The family meeting is at 10:00 AM this morning apparently to discuss their on-going situation and burial arrangements, et cetera. He is very desirous of being a part of that situation with the family. Rather than bring the entire group of twelve jurors back into open court on the record, I'm going to suggest to counsel that I chat with Mr. Von Stein individually, with obviously the Court Reporter present. Inform him that while I'm very sympathetic with is family death and surrounding circumstances, there's no way that we can excuse him this morning to attend, simply because the jury is in the middle of their deliberations, and the alternate juror here, * * *, was obviously excused yesterday afternoon when the original twelve were ready to deliberate.
 * * *
 The court: * * * The record should reflect that the Court Reporter, Mrs. Miller, and Juror No. 10, Howard Von Stein, are meeting in chambers. First, let me say that on behalf of the court and everybody else here, we're certainly sorry for the death that's happened in your family. Kind of puts me in a difficult spot.
 Juror No. 10: I know.
 The court: * * * You're suddenly faced with balancing a couple of real important situations here. One, the fact that the jury needs to continue on with the deliberations today. And two, you obviously would like to be at the family gathering. I believe that's 10:00 this morning?
 Juror No. 10: Yes.
 The court: Do you feel you can continue on with the deliberations this morning and kind of separate things out?
 Juror No. 10: I didn't get a lot of sleep last night, but yeah, I think I can do that. I guess if I felt we could get things wrapped up this morning it would be fine. I guess I'd kind of let my mother-in-law know that I was going to be to try to be there, but if I got there at noon, whatever, I think that would be acceptable.
 The court: I certainly can't speak for the status of deliberations, and I don't want to speak to the status of deliberations. That's kind of a touchy area. We did that with the foreman last evening. * * * The law requires me to require you to continue on with the deliberations at least for awhile this morning.
 Juror No. 10: Okay. I can abide by that.
 The court: You think you can separate out the family situation and the lack of sleep, so to speak, and follow the oath the best you can?
 Juror No. 10: Yeah.
The court: Okay.
 The discussion outlined above reveals that the court asked Juror No. 10 if he would be able to continue despite the trauma he had suffered and continue to uphold his oath. The juror with candor responded affirmatively. As stated previously the trial judge is in the best position to determine whether or not Juror No. 10 was sincere and indeed he so thought. Therefore, it is not evident that Gary suffered material prejudice because the trial judge decided not to excuse Juror No. 10 and declare a mistrial. No error having been shown, Gary's first assignment of error is overruled.
In his second assignment of error Gary claims that the trial court erred when it failed to give a Howard instruction to the jury when the jury was deadlocked on the issue of guilt or innocence. At the outset we observe that failure to object to "improprieties in jury instructions as required by Criminal Rule 30 is a waiver of the issue on appeal." State v. Williams (1977)51 Ohio St.2d 112, 364 N.E.2d 1364 (vacated on other grounds). The appellate courts of Ohio have consistently held that errors which could have been called to the trial court's attention at the time when such errors were made and could have been avoided but were not will not be heard on appeal. Id. at 112.
This prohibition is not absolute. The reviewing court mayoverturn an unpreserved issue for plain error. State v. Craft(1977), 52 Ohio App.2d 1, 367 N.E.2d 1221. "A `plain error'committed by a trial court and reviewable on appeal, is an obviouserror shown by the record which is prejudicial to an accused,although neither objected to nor affirmatively waived, which, ifallowed to stand would have a substantial adverse impact on theintegrity of and public confidence in judicial proceedings." Id.at paragraph one of the syllabus. An improper jury instruction,or a failure to give an instruction, will not constitute plainerror unless, but for the error, the outcome of the trial wouldclearly have been otherwise. State v. Long (1978), 53 Ohio St.2d 91,paragraph two of syllabus. "Notice of plain error is to betaken with utmost caution, under exceptional circumstances andonly to prevent a manifest miscarriage of justice." State v.Williams (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364, (vacated onother grounds) at paragraph three of the syllabus.
The record reveals that Gary failed to object to the instructions given to the jury at trial and further failed to request that a Howard instruction be given. Therefore, this court will reverse only if the failure to give a Howard instruction constituted plain error.
Gary argues that the instructions are indeed plain errorbecause when a jury is deadlocked the court is required to give aHoward instruction. It is a well-settled principle that the lawencourages jurors to agree, not to deadlock, and a court may urgea jury to make very reasonable effort to reach a verdict. Statev. Sabbah (1982), 13 Ohio App.3d 124, 138, 468 N.E.2d 718, 733.The instruction formulated by State v. Howard (1989), 42 Ohio St.3d 18is to be given to a jury "when determination has beenmade that the jury is deadlocked in its decision." State v.Minnis (Feb. 11, 1992), Franklin County App. No. 91AP-844,unreported. There is no bright line rule that may be used todetermine when a jury is deadlocked and when the supplementalcharge should be read to the jury. Id.
In the present case, it is apparent that the comments made by the jury indicating that they might be deadlocked occurred only four hours after deliberations had begun. Several courts have agreed that an initial comment by the jurors after only a short period of deliberation does not require that the Court immediately give a Howard instruction. State v. Dickens (May 8, 1998), Hamilton County App. No. C-960365, unreported; State v. Beasley
(March 26, 1999), Hamilton County App. No. C-980535, unreported. Moreover, Gary's counsel, in agreement with the Court and the prosecutor, indicated that he didn't think it was appropriate to give a Howard charge to the jury at such time. Therefore, it would appear that not only was a Howard instruction unnecessary but any error in failing to give such an instruction was not only invited error but harmless. It is well settled that "a party will not be permitted to take advantage of an error which he, himself, invited or induced the court to make." State ex rel., Soukup v.Celebreeze, Judge (1998), 83 Ohio St.3d 549, 550. No error having been shown, Gary's second assignment of error is overruled and the judgment of the Court of Common Pleas of Hancock County is affirmed.
Judgment affirmed.
 BRYANT, J.
SHAW and WALTERS, JJ., concur.