OPINION JUDGMENT ENTRY
{¶ 1} Defendant-appellant John Stidham appeals his conviction and sentence from the Knox County Court of Common Pleas on one count of receiving stolen property. Plaintiff-appellee is the State of Ohio.
STATEMENT OF THE FACTS AND CASE
 {¶ 2} On August 5, 2002, the Knox County Grand Jury indicted appellant on one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree. At his arraignment on November 22, 2002, appellant entered a plea of not guilty to the charge contained in the indictment.
 {¶ 3} Thereafter, a jury trial commenced on March 11, 2003. The following evidence was adduced at trial.
 {¶ 4} Philip Kinney, who works in a body shop, purchased a 1987 red 4 X 4 Ford Ranger from Dick Sabo Ford and received a title to the same in July of 1998. Kinney financed the purchase of the truck through Ford Motor Credit Company. During the afternoon of January 2, 2000, after his truck broke down on Interstate 71 in Delaware County, Ohio, Kinney walked to a rest stop and called his then girlfriend to pick him up. When he returned to the same location the next morning to retrieve the vehicle, Kinney discovered that the truck was gone. Kinney then reported the 1987 Ford Ranger missing to the Ohio State Highway Patrol and made a claim on his insurance through Nationwide Insurance, which issued a check to Ford Motor Credit Company.
 {¶ 5} Subsequently, on May 13, 2002, Kinney went to the Knox County Sheriff's Office to identify the truck. Kinney testified that the truck at the Sheriff's Office appeared to be his truck and that he had "no reason to think it wasn't." Transcript at 72.
 {¶ 6} At trial, Kinney testified that appellant was either his half brother or step-brother[1] and that he had known appellant since approximately 1997. The following testimony was adduced when Kinney was asked whether appellant had his permission to take, have or dispose of the 1997 Ranger in January of 2000:
 {¶ 7} "A. No. I didn't know he had it.
 {¶ 8} "Q. And if you were to have learned that he had it and sold it, would you consider that to be theft?
 {¶ 9} "A. I guess. I mean, as far as I know it is.
 {¶ 10} "Q. All right. He didn't have your permission —
 {¶ 11} "A. No.
 {¶ 12} "Q. — to have the truck? You weren't aware that he had it?
 {¶ 13} "A. No.
 {¶ 14} "Q. That's your testimony?
 {¶ 15} "A. Yes." Transcript at 73-37.
 {¶ 16} On cross-examination, Kinney testified that he admitted to Detective Durbin of the Knox County Sheriff's Office that he had changed the vehicle identification (VIN) number on other vehicles before, including a Ram Charger. On redirect, Kinney testified that he changed the VIN numbers by himself since "the dash was broke in and I had another truck that had the dash in it that was good so I just used it." Transcript at 80. The Ram Charger that Kinney changed the VIN number in was appellant's truck.
 {¶ 17} At trial, Lyman Sheldon testified that he used to work with appellant at Cuddy Farms. In 2000, Sheldon purchased a truck from appellant for $2,500.00. According to Sheldon, appellant told Sheldon that he was purchasing a 1983 Ford Ranger. However, when Sheldon tried putting some parts on the truck, the parts would not fit. The parts that did fit the truck were not for a 1983 truck. Sheldon further testified that, in the spring of 2002, appellant wanted to buy the truck back from Sheldon and that Sheldon offered to sell the same to appellant for $2,800.00. Before appellant was able to produce the money, the Sheriff's Office came and took the truck.
 {¶ 18} The next witness to testify at trial was Gene Davis, the owner of G D Motors, a car dealership. Davis testified that he picked up a 1987 Ford Ranger at an auction in 1998 and then resold the same to Stephanie Patterson. In turn, Patterson (now Travis) testified that she owned a 1987 Ford Ranger in 1998 and that, approximately five to six months later, she sold the truck to Dick Sabo Ford. Patterson further testified that she did not have anything else to do with the truck until she was contacted by the Sheriff's Office in 2002 and went to the Office to "identify it saying that I owned it previously." Transcript at 110.
 {¶ 19} Both Stephanie Patterson and Gene Davis identified the 1987 Ford Ranger at the Sheriff's Office as the vehicle they previoiusly had owned and Lyman Sheldon identified the same vehicle as the 1983 Ford Ranger that he allegedly had bought from appellant.
 {¶ 20} At trial, Russell Wilson testified that he purchased a red and grey 1983 Ford Ranger and that he later sold the same to appellant for $25.00. According to Wilson, the truck had four cylinders and was a two-wheel drive vehicle. After receiving a call from the Sheriff's Department in May of 2002, Wilson went to take a look at the truck. Wilson testified that the truck at the Sheriff's Department was not the 1983 Ford Ranger that he had sold to appellant.
 {¶ 21} Detective Robert Durbin of the Knox County Sheriff's Office testified at trial that in May of 2002, he began investigating appellant for allegedly receiving, or retaining or disposing of a stolen 1987 Ford Ranger. When he went to Lyman Sheldon's residence to look at the 1983 Ford truck that he had, the Detective discovered that the truck "had a six cylinder, fuel injected, it was four-wheel drive and didn't match the VIN number that was on it." Transcript at 121. An investigation revealed that the VIN plate that was in the truck was glued onto the dash and that the VIN number was for a 1983 Ford Ranger that previously had belonged to Russell Wright. The following is an excerpt from the Detective's testimony at trial:
 {¶ 22} "Q. Does that VIN number for that 1983 Ford pickup truck match the VIN number that you pried off the dash of the 1997 Ford Ranger?
 {¶ 23} "A. The 1987 Ford Ranger
 {¶ 24} "Q. Yes. I'm sorry. The 1987 Ford Ranger.
 {¶ 25} "A. Yes, it does.
 {¶ 26} "Q. And in the course of your investigation did you determine what the differences were between the 1983 description and the 1987 vehicle that you had possession of?
 {¶ 27} "A. Yes, I did.
 {¶ 28} "Q. And what were the differences?
 {¶ 29} "A. The 1983 was supposed to have a four cylinder; it was a two-wheel drive vehicle The 1987 was supposed to be a fuel injected six cylinder, four-wheel drive." Transcript at 127.
 {¶ 30} After the State rested, appellant testified in his own defense. During direct examination, appellant admitted that he previously had been convicted of receiving stolen property and that he had pled guilty to such charge. Appellant testified that Russell Wilson sold him a 1983 Ford Ranger for $25.00 and that he intended to sell the same for parts. Appellant further testified that he sold some parts and that he sold the main cab and title to Philip Kinney for approximately $100.00. According to appellant, he got the vehicle that he sold to Lyman Sheldon from Philip Kinney. Appellant denied that he changed the VIN number on the 1987 Ford Ranger and testified that he had never changed the VIN numbers on any vehicle.
 {¶ 31} On cross-examination, appellant conceded that he had felony convictions for burglary, breaking and entering, felony theft, and grand theft and that he had spent a majority of the last ten years in prison. Appellant also testified that it was a coincidence that, just two weeks after Nationwide Insurance Company closed their case, he bought a vehicle matching almost the same description as the allegedly stolen vehicle for $25.00.
 {¶ 32} At the conclusion of the evidence and the end of deliberations, the jury, on March 11, 2003, found appellant guilty of receiving stolen property. As memorialized in an entry filed on June 3, 2003, appellant was sentenced to fifteen months in prison and ordered appellant to make restitution to Sheldon Lyman in the amount of $2,800.00.
 {¶ 33} It is from the trial court's June 3, 2003, entry that appellant now appeals, raising the following assignments of error:
 {¶ 34} "I. The trial court committed plain error in giving a potentially deadlocked jury an instruction that deviated from the instruction approved in State v. Howard (1989), 42 OHIO St.3d 18.
 {¶ 35} "II. The jury's verdict of guilty was against the manifest weight of the evidence."
 I {¶ 36} Appellant, in his first assignment of error, argues that the trial court committed plain error in giving a potentially deadlocked jury an erroneous jury instruction. We disagree.
 {¶ 37} During the trial in this matter, after the jury indicated to the trial court that it had voted "numerous times and we keep coming back to 11 to 1," the trial court gave the jury the following instruction:
 {¶ 38} ". . . The completion of this trial is of great importance to the parties and to the Court. Not only has there been considerable expense to bring this matter to trial, but also expenditure of valuable time of the parties, the Court, the attorneys, and, of course, your valuable time. I urge you to exert every possible effort to reach an agreement if you can conscientiously do so. This is a new and difficult assignment for you. The process to discussion and deliberation in the jury room is necessarily slow and requires careful consideration and patience. I request that you return to the jury room and review the opinions of each juror to determine whether you have overlooked areas of agreement which could lead to a verdict.
 {¶ 39} "I'm going to ask you to go back in. It's just 5:00 right now. If you want to take five or ten minutes, get a smoke break for those of you who smoke, come back in and I'll ask you to continue your deliberations at least for another 20 minutes or so. I want you to make another good faith effort here to arrive at a verdict. Okay. So, go ahead and take a quick break here and get your heads cleared and we'll try it again." Transcript at 197-198.
 {¶ 40} Appellant did not object to the instruction that was given. The jury then resumed their deliberations at 5:10 p.m. on March 11, 2003, and, at approximately 5:16 p.m., returned with a verdict of guilty. Appellant now contends that the trial court committed plain error in giving the above instruction since it deviated from the instruction approved in State v. Howard
(1989), 42 Ohio St.3d 18, 537 N.E.2d 188.
 {¶ 41} Crim.R. 52(B) provides, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804; State v. Cooperrider (1983), 4 Ohio St.3d 226,448 N.E.2d 452. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Stojetz, 84 Ohio St.3d 452, 455,1999-Ohio-464, 705 N.E.2d 329.
 {¶ 42} The Howard charge is intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus. State v. Howard (1989),42 Ohio St.3d 18, 537 N.E.2d 188. In Howard, supra., paragraph two of the syllabus, the Supreme Court of Ohio set out the following supplemental instruction to be given to juries in Ohio deadlocked on the question of conviction or acquittal: "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."
 {¶ 43} In formulating the instruction it approved inHoward, the Supreme Court recognized several competing factors regarding the giving of a supplemental instruction to a deadlocked jury, and attempted to accommodate those factors. The supplemental instruction must not be coercive by stressing that the jury must reach a verdict. Howard, supra. It must, however, permit the trial judge to remind the jury of its purpose, namely, to reach a unanimous decision. The supplemental instruction must be balanced and neutral and it cannot single out jurors in the minority and instruct them to reconsider their position. Id. Rather, it must encourage a verdict and it must be balanced, asking all jurors to reconsider their opinions. Id. at 25.
 {¶ 44} This Court previously has held that the exact Howard
charge need not be given provided that, taken as a whole, the instruction did not coerce the jury into reaching a verdict or did not single out jurors in the minority and instruct them to reconsider their position. See, for example, State v. Danzy
(Nov. 13, 2000), Stark App. No. 2000CA00117, 2000 WL 1701224. InDanzy, the appellant argued that the trial court's failure to give the first sentence of the Howard charge was unduly prejudicial. In rejecting such argument, this Court stated, in relevant part, as follows: "[w]e find the trial court's deletion of the first sentence from the Howard charge did not destroy the balance of that charge. It did not coerce the jury to reach a verdict, nor did it single out jurors in the minority and instruct them to reconsider their position. We find, when taken as a whole, the trial court's instruction, did not render the charge non-neutral or unbalanced. While it may have been a better practice to give the entire jury instruction as mandated inHoward, we find no error amounting to a clear miscarriage of justice." Id at 4. See also State v. McLendon (Jan. 20, 1998), Stark App. No. 1997 CA 0071, 1998 WL 518524.[2]
 {¶ 45} In the case sub judice, appellant specifically challenges the following language in the supplemental charge: "Not only has there been considerable expense to bring this matter to trial, but also expenditure of valuable time of the parties, the Court, the attorneys, and, of course, your valuable time." However, in State v. Brown (Mar. 31, 2000), Trumbull App. Nos. 95-T-5349, 98-T-0061, 2000 WL 522339, the court held that the trial court's references to the time and expense of trial in its Howard charge did not prejudice the appellant since the references were not unduly coercive.[3] In so holding, the court noted that the reference to costs recited what the jury most likely already knew; that trials involve costs. Id., citing State v. Huber (June 16, 1989), Montgomery App. No. 11276, 1989 WL 68294.
 {¶ 46} Finally, given the overwhelming evidence of appellant's guilt as set forth in detail in the statement of facts above, we cannot say that, but for any error in the supplemental jury instruction, the outcome of the trial would have been different.
 {¶ 47} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 48} Appellant, in his second assignment of error, argues that the verdict was against the manifest weight of the evidence. We disagree.
 {¶ 49} Our standard of review for manifest weight in criminal matters is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717; See also State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 50} In the case sub judice, appellant was convicted of one count of receiving stolen property in violation of R.C.2913.51(A). R.C. 2913.51 states, in relevant part, as follows: "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 51} Based on the facts, as set forth in detail in the statement of facts, we find that the jury did not lose its way so as to create a manifest miscarriage of justice. There was evidence adduced at trial that appellant received, retained or disposed of a 1987 Ford Ranger that was the property of another and that appellant knew or had reasonable cause to believe that the same was obtained through the commission of a theft offense. Specifically, from the testimony adduced at trial, it was established that Gene Davis sold a 1987 Ford Ranger to Stephanie Davis who, a few months later, sold the same to Dick Sabo Ford. In turn, Dick Sabo Ford sold the 1987 Ford Ranger to Philip Kinney, appellant's half brother. After Kinney reported the vehicle stolen in January of 2000, his insurance company paid his claim.
 {¶ 52} The evidence further established that, in February of 2000, after Kinney's insurance claim was settled, appellant bought a 1983 Ford Ranger for $25.00. Subsequently, in the Spring of 2000, appellant sold Lyman Sheldon what Sheldon believed was a 1983 Ford Ranger for $2,500.00. However, while the VIN number for such vehicle indicated that the same was a 1983 truck, the vehicle that appellant actually sold Sheldon was the 1987 Ford Ranger with the 1983 Ford Ranger's VIN number glued onto the dash. While, at trial, appellant testified that he got the vehicle that he sold to Lyman Sheldon from Philip Kinney and that he had no reason to believe that the vehicle was associated with stolen property, clearly appellant, who has felony convictions, was not a credible witness. In short, after reviewing the entire record, we cannot say that the jury lost its way in convicting appellant of receiving stolen property.
 {¶ 53} Appellant's second assignment of error is, therefore, overruled.
 {¶ 54} Accordingly, the judgment of the Knox County Court of Common Pleas is affirmed.
Edwards, J. Gwin, P.J. and Boggins, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Kinney and appellant have the same mother, but different fathers.
[2] In McLendon, the appellant argued that the trial court erred in deviating from the standard Howard instruction. This Court, in finding no error in the Howard charge given, noted that while a trial court should refrain from deviating from the standard Howard charge, there is no error as long as the charge is not unduly coercive to members of the jury in the minority.
[3] In Brown, when the jury indicated that it could not agree on the murder charge, the trial court gave the jury the following supplemental charge: "Ladies and gentlemen, the completion of this trial is of great importance to the parties and to the Court. Not only has there been considerable expense to bring this matter to trial, but also expenditure of valuable time of the parties, the Court, the attorneys and, of course, your valuable time. I urge you to exert every possible effort to reach an agreement, if you can conscientiously do so . . ."