Defendant-appellant Antonio Watkins (dob March 16, 1977; Watkins) appeals from the following jury trial convictions: (1) aggravated robbery, in violation of R.C. 2911.01 [see Cuyahoga County Common Pleas Court Case No. CR-374044];[1] and, (2) possession of drugs [crack cocaine, a Schedule II drug in the amount of one gram or less], in violation of R.C. 2925.11 [see Cuyahoga County Common Pleas Court Case No. CR-375504]. For the reasons adduced below, we affirm in part and reverse in part, and remand for resentencing on the aggravated robbery conviction.
A review of the record on appeal indicates that the offenses at issue arose from a drug transaction which did not go as planned.
On February 16, 1999, at approximately 10:00 p.m., Lawrence Felts was driving his automobile, heading to the West 174th Street, Cleveland home of Joseph M. Nowak, who was accompanying Felts in the passenger seat.[2]
Along the way, the two men decided to obtain some marijuana for their personal use. To that end, they stopped the car at an intersection, approximately a ten-minute walk from Nowak's home, where a Convenient Store was located and where they expected to be able to buy the illicit substance from three males who were standing by the store. Nowak recognized one of these men as Eric. Nowak further stated that Eric told them that he knew where some marijuana could be obtained. Felts and Nowak arranged to meet the group of three men at Nowak's home to complete the purchase a short while later, and then left for home, which was located on a cul-de-sac.
Nowak and Felts arrived at the Nowak home and, within minutes, were joined on the illuminated porch of the home by the three men from the Convenient Store, who arrived on foot. Following some conversation between the men, Nowak retrieved a telephone for Eric's use. Felts then went inside as the males meandered about in the vicinity of the porch. Despite his telephonic search, Eric was unsuccessful in locating any marijuana. At that point, Nowak testified that someone offered him crack cocaine, which he declined, and Felts came back outside. As soon as Felts closed the door, Nowak observed Watkins coming from behind a pillar with a grin on his face. Nowak then turned toward the door at which time, according to Nowak, Watkins placed a silver-barreled handgun against his neck and demanded money. Nowak froze in place as Watkins rummaged through Nowak's pockets searching for money, retrieving a few dollars from one of the front pockets.
Watkins then pointed the firearm at Felts and Eric, who stopped and put their hands up. Watkins proceeded to ask Felts what valuables he possessed, and Felts, displaying the interior of his wallet, indicated that he had no money therein. Appellant then turned his attention back to Nowak and, at gun point, ordered Nowak to remove the leather jacket he was wearing, which he did. Watkins and the other man from the Convenient Store then left the scene, leaving Eric, Nowak and Felts outside the home. Nowak then telephoned the police and reported the theft. Nowak identified Watkins in court as the man who robbed him at gunpoint.
Nowak gave a physical description of his two assailants and a statement to the police that night, but did not identify Eric as an assailant because, based upon Eric staying at the scene and exhibiting fear after the theft, he believed that Eric was not involved in the theft. Later that night, Nowak sketched a composite (see State Exhibit 2) of Watkins from memory.
The following morning, Nowak received a telephone call to the effect that someone had found his Blockbuster video store card. He arranged to meet the finder of the card, who lived on the housing estate property, around noon the next day. On the way to retrieve the card, Nowak and Felts observed a man being arrested by the police near the office building for the housing estate property. Nowak stopped and gave his composite sketch to the officer and, their having viewed the suspect personally, Felts positively identified the appellant as the assailant from the night before. Later, Nowak recovered his stolen leather coat (valued at approximately $250 by Nowak) from Detective Hamilton who had seized it from Eric Hayes based on the tip provided by Nowak.[3] Nowak testified that between $80 to $100 in cash was also stolen from him by the appellant. Nowak later picked the appellant's photograph from an array of six photographs prepared by the police, and also identified appellant in court.
Mr. Felts testified on behalf of the prosecution and corroborated Nowak's testimony, in particular, that the appellant was the assailant. Felts also picked the appellant's photograph from the photograph array prepared by the police.
Cleveland Police Detective Maurice Hamilton, an officer with twenty years of police experience, testified on behalf of the prosecution and detailed his investigation of the case and the preparation and giving of the photograph array to Nowak and Felts. Both victims, without hesitation, picked the appellant's photograph from the array. The detective also interviewed the appellant subsequent to the giving of the array. In this interview, it was the detective's observation that appellant's story was untruthful, inconsistent and changing, and that appellant was a liar despite denying involvement with the robbery. (Tr. 218, 234-235.) The detective also testified as to how he recovered the stolen coat from Eric Hayes, who told the officer that he (Eric Hayes) had received the coat from the appellant. (Tr. 223-224.)
CMHA Officer Harley Wiltshire testified on behalf of the prosecution and detailed how he and his partner had detained a group of four males for loitering on estate property. One of these young men was the appellant, and when ordered to stop by the officers, initially did not stop. When the officers did finally stop the appellant, a pat-down of the appellant found four rocks of crack cocaine in a plastic baggy on his person. The appellant also made a statement regarding the incident involving Nowak and Felts, indicating that he could get the stolen property back and that he knew the identities of the other two suspects in the robbery. (Tr. 278.) The officers placed the appellant into their squad car. It was at this point that Nowak and Felts came upon the scene and Felts identified the appellant as the robber from the night before. The appellant denied robbing anyone.
CMHA Officer Paul Tallman, who was Officer Wiltshire's partner and the officer who detained the appellant, corroborated Officer Wiltshire's testimony and also authenticated the scientific report on the crack cocaine seized from the appellant. The report indicated that the cocaine weighed 0.65 grams.
Eric Hayes also testified on behalf of the prosecution and corroborated the version of events set forth by the prosecution, indicating that appellant committed the robbery and also later sold him the stolen leather coat. Hayes also identified the appellant as the thief from the photograph array prepared by the police.
The defendant-appellant put on no witnesses during his case-in-chief.
Subsequent to the verdict and the preparation of a presentence investigation report, the court sentenced the appellant to 4 years on the aggravated robbery offense, and 7 months on the drug offense, concurrent. The court also indicated that it would consider shock probation after appellant served four months imprisonment.[4]
This timely appeal from the convictions followed and presents five assignments of error for review.
The first assignment of error provides:
 I. ANTONIO WATKINS WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BEFORE AN IMPARTIAL JURY, BY THE REPEATED INTRODUCTION OF IMPROPER OTHER ACTS EVIDENCE IN THE STATE'S CASE.
In this assignment, appellant complains of the following instances of other acts evidence: (1) during the direct examination of Nowak, Nowak testified as to seeing appellant on a prior occasion in October of 1998 approach a pair of bicyclists carrying a firearm in appellant's waistband; (2) Detective Hamilton informing the jury through inference that appellant had a felony record when the Detective testified that all persons arrested for a felony are photographed for police records and that he assembled the photograph array from photographs with informational indicia redacted; and (3) the inferential testimony of Eric Hayes that he had known appellant for a long time to pull stuff like that, towit, a record of robbery. This bad acts evidence, according to appellant, was designed to inform the jury that, despite being innocent of the present charges, that appellant had a prior criminal record for which he should now be punished.
Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The defense relied upon a theory that someone other than the appellant robbed the victims. Reviewing the record, it is clear that Nowak and Hayes' testimony was used to demonstrate their ability to accurately identify the appellant from their having observed him on prior occasions around the neighborhood. Thus, there was no error in the admission of their contested evidence.
As for Detective Hamilton's testimony, the direct examination testimony of the witness indicates that he explained the process he utilized in preparing the photograph array. (See Tr. 211-213.) At no point were the photographs used in the array referenced as mug shots. The officer testified that he ordered a Cleveland Police photograph of Mr. Antonio Watkins. (Tr. 212.) Later, on cross-examination by the defense, the officer testified to the following relative to the photograph array:
* * *
 Q. Actually these photographs look kind of old, they are kind of yellow. I don't assume that you put any Oriental people in here, but they are kind of yellow.
 A. Our SIU unit takes these photos. Anybody that has ever been arrested on a felony charge ends up getting photographed and fingerprinted. (Tr. 245.)
No further comment or explanation was elicited regarding the officer's reference to felony arrestees being photographed.
One can infer from this spontaneous bit of information by the officer that since appellant's photograph was in the array, that he was previously arrested on a felony charge. Because the response was made as a result of cross-examination by the defense, error therein is of the invited category and we cannot provide a shield to its consequences. SeeState v. Banks (June 15, 2000), Cuyahoga App. No. 76271, unreported, at 12, citing State v. Jones (1996), 114 Ohio App.3d 306. Also, even if the error were to be recognized, harmless error would apply given the fact that the officer had testified on direct examination (without objection) that he had culled the array from the records of the Cleveland Police Department, the appellant had been identified as the assailant by the two victims and Hayes, and the appellant had told inconsistent stories to the investigating police. See Crim.R. 52(A).
The first assignment of error is overruled.
The second assignment provides:
II.
 ANTONIO WATKINS WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BEFORE AN IMPARTIAL JURY, WHEN A POLICE OFFICER TESTIFIED THAT, ALTHOUGH WATKINS DENIED INVOLVEMENT IN THE ROBBERIES BEING INVESTIGATED, HE THOUGHT WATKINS WAS A LIAR.
In this assignment, appellant argues that the testimony of Detective Hamilton, wherein the officer iterated that based upon the inconsistent answers he had received from the appellant during interrogation, he (the officer) reached the point where I just felt that he was a liar. (Tr. 218.) Appellant, without authority, analogizes the officer to a prosecutor or an expert witness who is precluded from issuing a personal opinion as to the credibility of a witness and urges reversal.
Contrary to the argument of the appellant, Detective Hamilton was not an expert witness; he was a lay witness. See State v. Jells (1990),53 Ohio St.3d 22, 28 (police officer testimony regarding the matching of a set of footprints was lay opinion). The subject matter of his testimony was not beyond the realm of understanding of an ordinary person. As a lay witness, the officer's opinion, based upon the perception of the officer, was admissible pursuant to Evid.R. 701, which states:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
In the case sub judice, Detective Hamilton's opinion that appellant was lying was rationally based on the officer's perception of the appellant, and the opinion was helpful to a determination of a fact in issue, to-wit, whether the appellant had committed the offenses in issue. We cannot conclude that the trial court abused its discretion in admitting this piece of opinion evidence. City of Urbana ex rel. Newlin v. Downing
(1989), 43 Ohio St.3d 109, 113 (the admissibility of lay witness testimony is reviewed under an abuse of discretion standard).
The second assignment of error is overruled.
The third assignment provides:
III.
 ANTONIO WATKINS WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BEFORE AN IMPARTIAL JURY, WHEN THE TRIAL COURT FAILED TO GIVE THE APPROPRIATE JURY INSTRUCTION UPON LEARNING THAT THE JURY WAS DEADLOCKED.
In this assignment, appellant argues that the trial court erred in not giving the mandated Howard charge to the jury after being informed twice through communications from the jury foreperson that the jury was steadfastly deadlocked on a 10 to 2 vote in favor of guilty due to a racial consideration which developed during the deliberations. The authority of State v. Howard (1989), 42 Ohio St.3d 18, was explained as follows:
 The Court in Howard rejected the traditional charge to deadlocked juries as set forth in the very early case of State v. Allen (1896), 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, which instructed that if the larger number of jurors were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.
 Id.at 501. The Howard Court found that the Allen
charge was unduly coercive to members of the jury in the minority because it orders them to reevaluate their position but does not require that members of the majority do the same. The Howard Court then went on to replace the Allen charge with the following instruction:
 The principle mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large portion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe that the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced that it is erroneous. If there is disagreement, all jurors should reexamine their positions given that a unanimous decision has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the desire to arrive at truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of the judgment not concurred in by all other jurors.
 Id. at 25-6. Rather than instructing the minority jurors to reconsider their position, the Howard charge asks all jurors to review their positions.
State v. Washington (Feb. 13, 1998), Montgomery App. No. 16293, unreported, 1998 WL 57797, at 13-14.
In the present case the trial court, in response to the jury communications, issued a supplemental jury charge on the afternoon of July 26, 2000, thusly:
 THE COURT: I got a communication this morning and I just got a communication right now, it's 2:20, that there is an issue that's being raised with you regarding race. I'm going to give you an instruction that you need to follow, and that is, that race is not an issue in this case. It's not to be considered as an issue in this case. And I'm also going to give you this instruction.
 I've given you the instructions that apply to this case, the instructions on aggravated robbery, and the instructions on the drug count, and also the instructions regarding deliberations, and everything that applies to this case.
 It is your obligation to accept the law as I gave it to you. You're required to accept the law as I gave it to you and not to change it.
 Also in keeping with your oath as jurors, you must refuse absolutely to have your judgment influenced by any sympathy, bias, prejudice, or race, either for or against the State of Ohio or for the defendant in this case. Your sole and only concern is to determine the facts in this case and whether the facts prove or do not prove the offenses under which the defendant is charged in this case.
 So that's the instruction I'll give you at this time. If you have any more communications, communicate them to me. I'll answer your requests from now on in the courtroom, and that's it. (Tr. 427-428.)
There were no objections or requested modifications by the parties to the language of this supplemental charge. The next morning, the jury returned its verdict.
While the supplemental charge at issue did not state the Howard chargeverbatim, we conclude that the failure to object renders harmless error to be applicable, and that plain error, which is not argued on appeal, is absent.
The failure to object to claimed error was discussed in State v. Rowe
(1993) 92 Ohio App.3d 652, 671, thusly:
 Generally, objections not raised in the trial court are waived; however, "plain error" may be raised for the first time on appeal. See State v. Awan (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201-202, 489 N.E.2d 277, 278-279; Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. Under Evid.R. 103, error generally may not be predicated on a ruling allowing evidence unless a substantial right is affected and a timely objection or motion to strike appears in the record. Evid.R. 103(A). [637 N.E.2d 42] However, plain error is always reviewable and comprises errors which are so substantial as to result in a clear miscarriage of justice. State v. Craft (1977), 52 Ohio App.2d 1, 6 O.O.3d 1, 367 N.E.2d 1221.
In the present case, the totality of the evidence which supports the convictions obviates a determination that the putative error in the supplemental jury charge resulted in a clear and manifest miscarriage of justice. Thus, plain error is inapplicable.
The third assignment of error is overruled.
The fourth assignment provides:
IV.
 ANTONIO WATKINS WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS SENTENCES IN THE CASE AT BAR, AS THEY DO NOT COMPORT WITH OHIO'S NEW SENTENCING STRUCTURE.
In this assignment, appellant argues that his sentences were contrary to law by not being imposed pursuant to Amended Senate Bill 2, which, according to appellant, mandates that he be given the minimum term of imprisonment for each offense pursuant to R.C. 2929.14(B) since the trial court did not record the mandatory findings necessary for the imposition of a greater-than-the-minimum term. See State v. Edmonson (1999),86 Ohio St.3d 324. Appellee concedes the basis for appellant's argument, but argues that the issue is now moot because appellant, after serving 6 months of his sentence, was granted shock probation on January 29, 2000, and is presently under community control sanctions until January 29, 2001.
A review of the record indicates that the potential term for the aggravated robbery offense was 3, 4, 5, 6, 7, 8, 9, or 10 years, see R.C.2929.14, and that the court imposed 4 years on that offense. The potential term for the drug offense was 6, 7, 8, 9, 10, 11, or 12 months, see R.C. 2929.14, and that the court imposed 7 months on that offense.
The issue is moot for purposes of the drug offense. Were we to remand for resentencing to the minimum term on the drug offense, namely 6 months, there would be no practical effect since appellant served 6 months of his sentence prior to being granted shock probation. That sentence has been served.
The same cannot be said of the aggravated robbery offense. The appellant, despite having served 6 months and presently being on community control sanctions, is still at risk of being returned to prison to serve out the remainder of a valid minimum sentence (3 years) should he violate the terms of the community control sanctions. Thus, the matter must be remanded, in part, for resentencing in conformance with State v.Edmonson, supra.
Accordingly, the fourth assignment of error is affirmed in part and overruled in part.
The fifth, and final, assignment provides:
V.
 ANTONIO WATKINS WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, BY COUNSEL'S FAILURE TO CREATE AN ADEQUATE RECORD FOR APPEAL.
In this assignment, appellant argues that his trial counsel (attorney George Mineff, Jr.) was ineffective in: (1) failing to present timely objections to the other acts evidence contained in the first assignment of error, supra; (2) not objecting to the testimony of Detective Hamilton which opined that appellant was lying, see the second assignment of error, supra; and (3) failing to lodge a timely objection to the supplemental jury charge contained in the third assignment of error,supra. This argument is premised on this court concluding that plain error is inapplicable with regard to these areas.
Prior to discussing the merits of this assignment, we must note that the second sub-argument in this assignment is clearly misplaced since defense counsel did preserve the alleged error in the admission of the evidence by lodging an immediate objection to Detective Hamilton's opinion of appellant's lack of truthfulness. (See Tr. 218.)
Turning to the merits of this assignment, we note that the standard of review for a claim of ineffective assistance of trial counsel was recently provided in State v. Gowdy (2000), 88 Ohio St.3d 387, 395-396:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In addition, to show defendant has been prejudiced by counsel's deficient performance, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id., paragraph three of the syllabus.
Based on the discussion of the issues in the first and third assignments of error herein, we cannot conclude that trial counsel's representation was insufficient because there is not a demonstration that, but for the claimed failures of counsel, the result of the trial would have been different. In short, prejudice has not been demonstrated.
The fifth assignment of error is overruled.
This cause is affirmed in part and reversed in part and remanded for resentencing.
The court finds there were reasonable grounds for this appeal.
It is, therefore, considered that said appellant and appellee each pay one-half of the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _____________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE
LEO M. SPELLACY, J., and ANNE L. KILBANE, J., CONCUR.
[1] Watkins was acquitted of firearm specifications, and also a second count of Aggravated Robbery, in that case.
[2] Nowak testified that he lived in the home, which was part of the property of the Cuyahoga County Metropolitan Housing Authority's Riverside Park Estates, with his mother. This housing project, because it is located along Rocky River Drive in Cleveland, is known in street parlance as the Rock. (Tr. 239-240.)
[3] Nowak testified that he had made a report to the police after observing Eric Hayes wearing the stolen coat at a Convenient Store within days of the robbery.
[4] On February 29, 2000, pursuant to a motion for judicial release, appellant states that the court granted shock probation.