OPINION
Defendant-appellant Dennis Danzy appeals the April 5, 2000 Judgment Entry of the Stark County Court of Common Pleas which found appellant guilty of one count of burglary and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
During the evening hours of November 26, 1999, Roy and Deborah Morris left their home in Canton, Ohio, to walk their dogs. Mr. Morris locked the back door and turned on the back porch light as he left the residence. The couple returned around 8:00 p.m., but as they approached the house, Mr. Morris noticed a pane of glass was broken out of the back door. Mr. Morris went into the residence and discovered someone had taken approximately $5,000 in cash and some of his wife's jewelry from a desk drawer inside the house. Mr. Morris called the police. The police found the glass light cover on the back porch had been taken off and laid on the deck. The lightbulb had also been removed. This glass light cover produced a single thumb print which was submitted to the Stark County Crime Lab for analysis. Dennis Florea, a fingerprint and firearms examiner with the Stark County Crime Lab analyzed the print. Mr. Florea lifted the fingerprint from the glass light cover and submitted the fingerprint to the automatic fingerprint identification system (hereinafter "AFIS"). The AFIS system produced a list of likely candidates with whom a fingerprint match could be made. Appellant was the number one candidate on this latent fingerprint list. Mr. Florea subsequently obtained an ink fingerprint card bearing appellant's fingerprints and compared the fingerprint card to the latent print lifted from the glass light cover. Mr. Florea determined the latent impression left on the glass cover was made by appellant's left thumb. Thereafter, Detective Croston of the Canton City Police Department interviewed appellant about his whereabouts on the day of the burglary. Appellant denied knowing the victims or being near their residence on the date in question. Appellant's mother and step-father testified at trial appellant was at home at the time of the burglary. On January 28, 2000, the Stark County Grand Jury indicted appellant with one count of burglary in violation of R.C. 2911.12. The matter proceeded to trial on March 27, 2000. After deliberation, the jury returned a guilty verdict on March 28, 2000. In an April 5, 2000 Judgment Entry, the trial court found appellant guilty of one count of burglary, in violation of R.C. 2911.12, and sentenced appellant to a term of six years in prison. It is from this judgment entry appellant prosecutes his appeal, assigning the following as error:
 I. THE JUDGMENT RENDERED BY THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. STATEMENTS MADE BY THE PROSECUTOR IN HER CLOSING ARGUMENT WERE SO PREJUDICIAL AND INFLAMMATORY AS TO VIOLATE APPELLANT'S CONSTITUTIONALLY PROTECTED RIGHTS.
 III. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY WITH THE ENTIRE HOWARD INSTRUCTION AFTER THE JURY HAD REACHED AN IMPASSE IN ITS DELIBERATIONS.
 I
In his first assignment of error, appellant maintains the verdict and judgment rendered by the trial court were against the manifest weight and sufficiency of the evidence. We disagree. In State v. Jenks (1981),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence or against the manifest weight of the evidence. Burglary is proscribed by R.C. 2911.12. The statute provides, in relevant part: (A) No person, by force, stealth, or deception, shall do any of the following:
* * *
 (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;
* * *
 (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.
* * *
Appellant maintains the State did not prove beyond a reasonable doubt all of the elements of burglary. Specifically, appellant argues the State failed to show he was the individual whose print matched those found on the lightbulb at the crime scene. Further, appellant contends the State failed to prove the likelihood a person may have been present in the home. "Where the State proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the State has presented sufficient evidence to support a charge of aggravated burglary under R.C. 2911.11." State v. Kilby (1977), 50 Ohio St.2d 21, para. 1 of the syllabus. Similarly, the Ohio Supreme Court has also recognized a jury may draw a permissive inference occupants were present in the residence at the time of the burglary. See, State v. Fowler (1983),4 Ohio St.3d 16. Further, the Ohio Supreme Court held fingerprints corresponding to those of the accused are sufficient proof of his identity to sustained his conviction, where the circumstances show such fingerprint, found at the scene of the crime, could only have been impressed at the time the offense was committed. State v. Franklin (1991), 62 Ohio St.3d 118. We find the State proved each of the elements beyond a reasonable doubt. Mr. Florea testified the fingerprint found at the crime scene matched appellant's fingerprint. The victims herein testified their house was burglarized while they were temporarily absent from their home, walking their dogs. The victims testified they did not know appellant, and the light cover and lightbulb on the back porch were intact when they left the residence, supporting the conclusion the fingerprint had been impressed at the time the offense was committed. We find this evidence legally sufficient to support a conviction of burglary in violation of R.C. 2911.12. Further, we find the jury's verdict was supported by the manifest weight of the evidence. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains statements made by the prosecutor in her closing argument were so prejudicial to appellant as to result in a miscarriage of justice. We disagree. The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160, cert. denied112 L.Ed.2d 596; State v. Smith (1984), 14 Ohio St.3d 13. The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940,947, 71 L.Ed.2d 78, 87. Because appellant's counsel failed to object to the alleged incidences of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. State v. Slagle (1992),65 Ohio St.3d 597, 604. Accordingly, we review these allegations under the plain error standard. Crim.R. 52(B) provides: (B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long (1978), 53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226. Appellant points to four statements by the prosecutor and argues that each was improper as an expression of the prosecutor's personal belief or opinion as to the credibility of a witness. These statements were 1) "I submit to you that the evidence you heard in regards to Dennis Danzy's statement to Detective Croston and his parent's is not quite as unbiased. And I am not here to tell you that his parents are bad people." T. at 294;
2) "* * *they got the idea together, and that was Dennis was home with us, but they didn't get the details. And those are the types of details that you don't make up because you either remember it or you don't. And when Dennis Danzy's mother told you that she was at school the Thursday before and Dennis was home when she got home that Thursday night that was wrong. We are talking about Thanksgiving. And if she's mistaken about that, then she can be mistaken about other things * * * Dennis Danzy committed that burglary and the State has proven that * * * " T. at 295;
3) "And why didn't [Appellant] get caught by these people coming home? Maybe he was lucky * * * But what we do know is that he was there, and not just there, involved in part of that burglary, an essential part * * * " T. at 305; and
4) "Dennis Danzy committed that burglary at the Morris home on November 26 * * *" T. at 309.
The Ohio Supreme Court has held it is improper for a prosecutor to express personal beliefs or opinions as the credibility of witnesses. State v. Apanovitch (1987), 33 Ohio St.3d 19. We find nothing improper with regard to statement number 1. While statements number 2, 3 and 4 may arguably, indirectly be construed to be statements of the prosecutor's personal beliefs, we find the prosecutor's comments fairly interpreted the evidence presented, and did not directly reflect the prosecutor's personal opinion about the evidence. Further, we find the statements did not effect appellant's substantial rights and did not result in a manifest miscarriage of justice. Accordingly, appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant maintains the trial court committed plain error when it failed to fully provide the Howard instruction to the jury after the jury reached an impasse in deliberations. Appellant concedes he failed to object to the trial court's instruction in this regard; therefore, this Court must review any alleged error under a plain error standard. However, appellant maintains the trial court's instruction did amount to plain error. We disagree. The Howard charge is intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a censuses. State v. Howard (1989), 42 Ohio St.3d 18. In State v. Howard (1989),42 Ohio St.3d 18, 537 N.E.2d 188, paragraph two of the syllabus, the Supreme Court of Ohio set out the appropriate supplemental instruction to be given to juries in Ohio deadlocked on the question of conviction or acquittal: The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.
In formulating the instruction it approved in Howard, the Supreme Court recognized several competing factors regarding the giving of a supplemental instruction to a divided jury, and attempted to accommodate those factors. The supplemental instruction must not be coercive by stressing that the jury must reach a verdict. Howard, supra, It must, however, permit the trial judge to remind the jury of its purpose, namely, to reach a unanimous decision. It must be balanced and neutral. Id. at 24, 537 N.E.2d at 193. It cannot single out jurors in the minority and instruct them to reconsider their position. Id. It must encourage a verdict and it must be balanced, asking all jurors to reconsider their opinions. Id. at 25. In the matter sub judice, the jury submitted a question to the trial court indicating the jury was deadlocked in an eleven to one vote. In response thereto, the trial court read the exact Howard instruction stated above, less the first sentence of the charge. Appellant contends the trial court's failure to include the first sentence, "[t]he principle mode, provided by our constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict," was unfairly prejudicial. We find the trial court's deletion of the first sentence from the Howard charge did not destroy the balance of that charge. It did not coerce the jury to reach a verdict, nor did it single out jurors in the minority and instruct them to reconsider their position. We find, when taken as a whole, the trial court's instruction, did not render the charge non-neutral or unbalanced. While it may have been a better practice to give the entire jury instruction as mandated in Howard, we find no error amounting to a clear miscarriage of justice. Accordingly, appellant's third assignment of error is overruled.
The April 5, 2000 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
 _____________________ Hoffman, P.J.
Hoffman, P.J. Farmer, J. and Reader, V.J. concur