OPINION *Page 2 
{¶ 1} Defendant-appellant Donnis Dixon appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of felonious assault with a firearm specification and one count of assault. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 15, 2006, the Stark County Grand Jury indicted appellant on one count of attempted murder in violation of R.C.2923.02(A) and 2903.02(A), a felony of the first degree, and one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the first degree, both with firearm specifications. Appellant also was indicted on one count of having weapons while under disability in violation of R.C. 2923.13(A)(2) and/or (A)(3), a felony of the third degree, one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree, one count of assault in violation of R.C. 2903.13(A)(C)(3), a felony of the fourth degree, and two counts of possession of cocaine, one in violation of R.C. 2925.11(A)(C)(4)(b), a felony of the fourth degree, and the other in violation of R.C. 2925.11 (A)(C)(4)(a), a felony of the fifth degree.
 {¶ 3} At his arraignment on September 22, 2006, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 4} Subsequently, on October 25, 2006, appellant filed a Motion to Sever count six of the indictment, possession of cocaine in violation of 2925.11(A)(C)(4)(b).[1] After the trial court granted such motion, a jury trial commenced on January 8, 2007, on the remaining counts. The following testimony was adduced at trial. *Page 3 
 {¶ 5} Massillon Police Officer Kenneth Hendricks received information from a confidential informant on August 9, 2006, that appellant was involved in illegal activity. The officer received a physical description of appellant, a description of appellant's motor vehicle, which was a late model blue Cadillac, and an address where appellant was staying.
 {¶ 6} On August 11, 2006, Officer Hendricks was working the 6:00 p.m. to 2:00 a.m. shift when, at approximately 11:00 p.m., he saw appellant "operating a car that he was described to be driving in control of." Transcript at 155. The car was a late model blue Cadillac. At the time, the officer had a civilian rider, Nicholas Tsankis, in his police cruiser. After seeing appellant's parked car, Officer Hendricks went around the block and, upon his return, discovered that the car was no longer parked in the same place. The officer saw the vehicle southbound on Richville Drive, Southeast and began following the same.
 {¶ 7} While following appellant, Officer Hendricks received information from dispatch that there was an outstanding warrant for appellant's arrest. As the officer turned onto Championship Drive, Southeast, he discovered appellant's vehicle parked on the right hand side near the curb. The officer, after seeing the driver side door come partially open, told appellant to stay in his vehicle. Appellant complied. Officer Hendricks then approached appellant's vehicle and told appellant that he was "looking for someone and I needed to talk with him, believed that he was that person." Transcript at 166.
 {¶ 8} Officer Hendricks told appellant that he knew appellant's name was Donnis Dixon and that he needed to talk to him. After a back up cruiser arrived on the *Page 4 
scene, Officer Hendricks decided to have appellant exit his vehicle. The following testimony was adduced when the officer was asked what happened when he asked appellant to get out of his vehicle:
 {¶ 9} "He turned towards me and started to exit the car, and I noticed his right hand drop down. I stepped back and thought he was going to rush into me trying to tackle me or knock me out of the way to escape. As he exited the car, I saw something black in his right hand, got a good look at it; saw that he had a small semiautomatic pistol in his hand." Transcript at 168.
 {¶ 10} Officer Hendricks testified that he then slapped at appellant twice, grabbed appellant's wrist, and that the two struggled. During the struggle, Officer Hendricks heard the trigger on the gun being pulled, but the gun did not discharge. While he was struggling with appellant, Officer Hendricks heard the gun click again and then struck appellant across the forearm, causing him to release the gun. According to the officer, the gun flew up over his head and landed in the street.
 {¶ 11} Officer Hendricks testified that he then grabbed at appellant and threw appellant back into the car. Appellant hit the officer in the chest with his hands, knocked him back a couple of steps and started running. Officer Hendricks testified that he discovered appellant's gun, a .9 millimeter semiautomatic, in pieces on the ground. The gun had a band around the handle that was the type of band that police officers wear around their badges when a police officer has been killed in the line of duty. According to Officer Hendricks, the band was holding the grips together.
 {¶ 12} Shortly thereafter, Officer Miguel Riccio arrived on the scene in a police cruiser and began pursuing appellant on foot. When he spotted Officer Riccio with *Page 5 
appellant, Officer Hendricks helped Officer Riccio arrest appellant. Officer Hendricks testified that as appellant was getting up, he was "making several statements about hate the cops, killing us all, He was ready to die. . ." Transcript at 180.
 {¶ 13} At trial, Officer Riccio testified that when he arrived on the scene, he observed appellant and Officer Hendricks struggling and saw appellant point a gun at the top of Officer Hendricks's head. Officer Riccio further testified that once appellant started running, he began pursuing him. According to Officer Riccio, appellant pointed something black at him as the two were running. The officer then yelled at appellant to drop the object. While running, appellant was reaching into his pocket and throwing clear plastic bags into tall grass.
 {¶ 14} Officer Riccio also testified that appellant stopped and turned around and swung his left hand at Officer Riccio who, in response, threw his left hand towards appellant. The officer testified that after appellant came towards him again, he sprayed appellant with pepper spray. The following is an excerpt from Officer Riccio's testimony:
 {¶ 15} "A. I start spraying him, and as I am spraying him, he's covering his hand and he's trying to come at me like this, (Indicating).
 {¶ 16} "Q. Okay.
 {¶ 17} "A. So he's getting pepper sprayed. I'm getting the pepper spray too because of the wind, so I can't breathe. He's coming at me, and I'm thinking okay, this ain't good. Something's bad going to happen.
 {¶ 18} "So I made the decision when he went down again to cover his face, I grabbed and I threw him like this and I jumped on him. I stared wrestling with him trying to put his hands behind his back. *Page 6 
 {¶ 19} "As I'm doing that, he's yelling, I'm going to kill all you pigs. He says, I am ready to go. I'm going to kill all of you pigs.
 {¶ 20} "Q. Were you able to handcuff him at that point?
 {¶ 21} "A. I was able to handcuff him." Transcript at 227-228.
 {¶ 22} Officer Riccio testified that he later learned that the object appellant had in his hand was a cell phone. When the officer went back to the area where appellant had been throwing the bags, he found one small baggie containing crack cocaine.
 {¶ 23} Officer Thomas Solinger testified at trial that, when he arrived on the scene, he discovered a handgun lying in the road with one of the grips broken off. The officer testified that the gun was in pieces and that the magazine, which contained five rounds, was out of the gun. According to Officer Solinger, there were no rounds chambered in the gun. Officer Solinger also testified that there was a police mourning badge on the gun holding the grip together. The gun was sent to the crime lab and found to be an operable firearm.
 {¶ 24} Nicholas Tsankis, the civilian who was riding with Officer Hendricks, testified that he was the union representative for the Fraternal Order of Police. Tsankis testified that when Officer Hendricks walked up to appellant's Cadillac, the door was closed. At the time, Tsankis was seated in the passenger front seat of the police cruiser. Tsankis testified that he then saw appellant exit his Cadillac with a gun in his hands and observed the struggle between appellant and Officer Hendricks. Tsankis testified that he heard the gun click when appellant pulled the trigger.
 {¶ 25} At trial, appellant testified in his own defense. Appellant testified that he had been convicted of felonious assault in 2000 and that he knew he was not permitted *Page 7 
to have a weapon. Appellant testified that he had a gun in his car because his wife had an argument with a man who, during the argument, had threatened appellant. Appellant further testified that Officer Hendricks grabbed the door of the Cadillac and opened the same. According to appellant, Officer Hendricks assaulted him by grabbing appellant's shirt and pulling him out of the Cadillac, causing the gun that was in appellant's lap to fall to the ground. Appellant further testified that he had been smoking marijuana in the Cadillac before pulling over and denied assaulting Officer Riccio.
 {¶ 26} The jury, after asking the trial court for a definition of felonious assault, was advised to reread the court's jury instructions. After asking the trial court what would happen if they could not come to an agreement on one of the counts, the jury was read the Howard
instruction.[2]
 {¶ 27} At the conclusion of the evidence and the end of deliberations, the jury, on January 9, 2007, found appellant guilty of felonious assault with a firearm specification with respect to Officer Hendricks, and assault with respect to Officer Riccio. The jury also found appellant guilty of having weapons while under disability and improperly handling firearms in a motor vehicle and not guilty of attempted murder and possession of cocaine. Prior to his sentencing hearing, appellant pleaded guilty to the previously severed count of possession of cocaine.
 {¶ 28} As memorialized in a Judgment Entry filed on January 26, 2007, appellant was sentenced to an aggregate prison sentence of nineteen (19) years.
 {¶ 29} Appellant now raises the following assignment of error on appeal: *Page 8 
 {¶ 30} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I {¶ 31} Appellant, in his sole assignment of error, argues that his convictions for felonious assault and assault are against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 32} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 33} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541, *Page 9 
citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 34} As is stated above, appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2) and assault in violation of R.C. 2903.13(A)(C)(3). R.C. 2903.11(A)(2) defines "felonious assault" as knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordinance. A person acts "knowingly" regardless of his purpose when he is aware his conduct will probably cause a certain result. R.C. 2901.22(B). In turn, R.C. 2903.13
states, in relevant part, as follows: "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn. . . .(C) whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree."
 {¶ 35} Appellant specifically contends that his convictions for felonious assault and assault were against the manifest weight and sufficiency of the evidence because of inconsistencies in the trial testimony. Appellant notes that Officer Hendricks testified at trial that he had only a physical description of appellant on August 11, 2006, while, at a previous suppression hearing, he testified that he had a driver's license photo of appellant on such date. Appellant also notes that, at trial, Officer Solinger testified that the police did not have a photo of appellant prior to the incident of August 11, 2006. Appellant also emphasized that while Officer Hendricks testified that, as he approached *Page 10 
appellant's car, the door was halfway open, Nicholas Tsankis testified that it was closed and that while Tsankis testified that he heard appellant's gun click once, the officer testified that it clicked twice. Appellant also points out that Nicholas Tsanksis did not testify that Officer Hendricks told appellant to remain inside his car.
 {¶ 36} Moreover, appellant also points out that, at trial, Officer Hendricks described injures that he had sustained during the struggle whereas at the preliminary hearing, he did not mention the same. Appellant also emphasizes that while the gun was collected in pieces, it arrived at the crime lab fully assembled and that no DNA testing was performed on the gun. Appellant also contends that, because Officer Hendricks is 5 inches taller and 130 pounds heavier than appellant, his testimony that appellant held a gun near his head and pulled the trigger is not believable. Appellant also alleges that Officer Riccio's testimony that appellant swung at him is not credible because they both were running at full speed and it is just as likely that they collided.
 {¶ 37} Finally, appellant notes that the jury asked for a definition of felonious assault and was advised to reread the court's jury instructions and then later, after asking what would happen if they could not come to a verdict, was read the Howard charge.
 {¶ 38} However, based upon the testimony set forth in detail in the above statement of facts, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly caused or attempted to cause physical harm to Officer Hendricks by means of a deadly weapon or dangerous ordnance. Both Officer Hendricks and Nicholas Tsankis testified that, during a struggle with Officer Hendricks, appellant pulled the trigger. While Officer *Page 11 
Hendricks testified that he heard the gun click twice, Tsankis, who was in the police cruiser at the time, only heard it click once. Both, however, testified that they heard the gun click. Officer Riccio also testified that he saw appellant pointing a gun at Officer Hendricks' head. The gun was later determined to be an operable weapon.
 {¶ 39} We further find that, based upon the testimony set forth in detail in the statement of facts, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly caused or attempted to cause physical harm to Officer Riccio. There was testimony at trial that, while Officer Riccio was pursuing him, appellant swung his left arm at the officer and that he struggled with him while being arrested. While appellant, in his brief, claims that he might have collided with Officer Riccio after suddenly stopping, as noted by appellee, appellant never testified to such effect.
 {¶ 40} Finally, we find that, after examining the entire record, we cannot say that the jury, as trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The jury, as trier of fact, was in the best position to assess credibility. The jury heard the testimony from Officers Hendricks, Riccio and others and also from appellant. Clearly, the jury did not find appellant's version of events to be credible. *Page 12 
 {¶ 41} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 42} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
 Edwards, J. Farmer, P.J. and Wise, J. concur *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] While the indictment alleged the remaining offenses occurred on August 11, 2006, it alleged the offense at issue in count six occurred on December 11, 2005.
[2] State v. Howard (1989), 42 Ohio St.3d 18, 537 N.E.2d 188. *Page 1